## A94A1209. ORKIN EXTERMINATING COMPANY, INC.
### v. McINTOSH et al.
#### (452 SE2d 159)

SMITH, Judge.

Suzanne McIntosh and Jeanette Mobley brought suit against Orkin Exterminating Company, alleging Orkin misapplied pesticides to a home owned by Mobley and lived in by McIntosh. The trial court denied Orkin's motion for summary judgment, and the case proceeded to trial. A pretrial motion in limine was granted by the trial court prohibiting the introduction of certain evidence by Orkin. At the close of plaintiffs' evidence, Orkin's motion for a directed verdict was denied. On the fourth day of trial, defendant's second witness, a former employee, began to testify from documents which had not been produced by Orkin during discovery. These documents recorded Orkin's inspections of the home after the application of the pesticides and its attempts at remedial action. Orkin previously had denied, both in discovery and at the pretrial conference, that any inspection reports existed. Upon voir dire, however, the witness testified he had simply walked into Orkin's local office that morning and removed the documents from the case file. Orkin's counsel could not explain why these documents were not produced, characterizing it as "an unsolved mystery."

The trial court declared a recess and conducted an inquiry into the circumstances of the documents' whereabouts and reappearance. The trial court declared a mistrial and ordered a hearing on the issue of fees and expenses necessitated by Orkin's conduct. Plaintiffs' coun-

sel subsequently filed a formal motion for fees, expenses, and costs. After a hearing, the trial court found the documents were highly relevant to the issues being tried and determined plaintiffs had been irretrievably prejudiced by the failure to produce the documents, regardless of whether that failure was intentional or negligent. The court ordered Orkin to pay plaintiffs' attorney fees necessitated by Orkin's conduct in failing to comply with discovery and causing the mistrial. Thereafter, Orkin declined to obey the order on the basis that it was not a "final judgment." The trial court found Orkin in wilful contempt of its earlier order and imposed a fine. Orkin appeals the order finding it in contempt. Orkin also appeals all previous rulings of the trial court pursuant to OCGA § 5-6-34 (d). See *Costanzo v. Jones*, 200 Ga. App. 806, 811 (3) (409 SE2d 686) (1991).

1. Orkin's contention that it may wait until final judgment in this action to pay attorney fees ordered by the trial court is unsupported by the Code, the case law, and indeed, by common sense. As the trial court observed, obedience to interlocutory orders, especially those governing discovery and trial management, is essential to the functioning of the judicial system. OCGA § 9-11-37 (b) (2) (D) specifically authorizes the trial court to treat as a contempt of court the failure to obey an order under that Code section.

Although an interlocutory order is not a judgment and therefore cannot be enforced by execution, the administration of justice requires that courts have the power to enforce their interlocutory orders and decrees by contempt proceedings. *Warehouse Carpet Sales &c. v. S.C.J. Assoc.*, 170 Ga. App. 352, 353 (1) (317 SE2d 328) (1984). Orkin's reliance on *MARTA v. Federick*, 187 Ga. App. 696 (371 SE2d 204) (1988), is misplaced because that case involves not the enforceability of an interlocutory order, but an attempt to make a bad faith claim under OCGA § 33-34-6 (b), (c) based upon a judgment entered as to fewer than all the parties and claims under OCGA § 9-11-54 (b).

Orkin's argument that it might be unable to recover the money upon possible later reversal is disingenuous, given Orkin's failure to use any of the procedural avenues open to it for protection of its interests, such as seeking a certificate of immediate review of the trial court's order or paying the money into the registry of the court. Orkin was bound to obey the order, even if erroneous, and thus was properly held in contempt. *Mathews v. City of Atlanta*, 167 Ga. App. 168, 169 (306 SE2d 3) (1983).

2. We next address Orkin's contention that the trial court erred in declaring a mistrial. The granting of a mistrial is within the sound discretion of the trial court. *McEachern v. McEachern*, 260 Ga. 320, 322 (2) (394 SE2d 92) (1990). "When a party proffers at trial evidence which should have been disclosed during discovery, exclusion of the proffered evidence is not an authorized sanction. The proper sanction

is to order a postponement or a mistrial. [Cit.]" *White v. Lance H. Herndon, Inc.*, 203 Ga. App. 580, 581 (5) (417 SE2d 383) (1992). The trial court determined the withheld documents were crucial to the issues and would have significantly altered plaintiffs' presentation of their case. Many of plaintiffs' witnesses testified by deposition, and it was impossible to elicit their testimony regarding this newly available information. The trial court concluded Orkin's conduct placed plaintiffs at a distinct disadvantage, no effective cure was available, and a mistrial was the only remedy. Orkin has not shown an abuse of discretion by the trial court, particularly in light of the unusual and extreme circumstances here.

3. A more complex issue is presented by the trial court's award of attorney fees against Orkin. In addressing this question, we bear in mind that the trial court has the inherent power to "control, in the furtherance of justice, the conduct of its officers and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto." OCGA § 15-1-3 (4). The powers of the trial court to control the time, place, scope, and financing of discovery are to be construed broadly, *Bicknell v. CBT Factors Corp.*, 171 Ga. App. 897, 899 (321 SE2d 383) (1984), and are not to be interfered with absent a clear abuse of discretion. *Vaughn & Co. v. Saul*, 143 Ga. App. 74, 80 (4) (237 SE2d 622) (1977).

In this action, the trial court imposed sanctions under OCGA § 9-11-37 (d). That Code section provides for immediate sanctions, without necessity of an order compelling discovery, for "[f]ailure of party to attend at own deposition or serve answers to interrogatories or respond to request for inspection." The imposition of penalties under 37 (d), however, is limited to an *absolute* failure to respond. *Mayer v. Interstate Fire Ins. Co.*, 243 Ga. 436, 439-440 (2) (254 SE2d 825) (1979). Here, there was no absolute failure to respond to the entire discovery request; there was a false response to a portion of a single interrogatory and its corresponding request for production. When an evasive or incomplete response to discovery is given, the proper remedy is a motion to compel resulting in a court order under OCGA § 9-11-37 (a). Id.

Some courts have interpreted a false response to an interrogatory as a "failure to respond" under Fed.R.Civ.P. 37 (d) or analogous state provisions and have imposed sanctions, including striking a party's pleadings and imposing judgment. See, e.g., *Airtex Corp. v. Shelley Radiant Ceiling Co.*, 536 F2d 145, 155 (7th Cir. 1976); *Bell v. Automobile Club of Michigan*, 80 F.R.D. 228 (E.D. Mich. 1978), appeal dismissed, 601 F2d 587 (6th Cir.), cert. denied, 442 U. S. 918 (99 SC 2839, 61 LE2d 285) (1979); *Sandoval v. Martinez*, 780 P2d 1152, 1154-1159 (N.M. App. 1989). We need not reach that issue here, because we find a remedy for Orkin's conduct within the scope of OCGA

§ 9-11-37 (a) (4) (A).

Orkin responded in verified interrogatory answers: "No written reports were provided." This response did not *appear* to be evasive or incomplete; it was straightforward, complete — and, in hindsight, clearly false.[1] As the trial court noted, plaintiffs understandably did not move to compel production of these items because a verified interrogatory response denied they existed. Plaintiffs again requested copies of inspection reports in the pretrial conference, and counsel for Orkin again assured both plaintiffs' counsel and the trial court that those documents did not exist. He stated a witness had some recollection of preparing notes, but that counsel had searched for those notes, was unable to locate them, and did not intend to introduce them. The trial court gave counsel specific instructions regarding the use of such documents if they were produced by the witness.[2]

The verified interrogatory answer and the assurances given by counsel to opposing counsel and to the court forestalled a motion to compel or an order compelling discovery under OCGA § 9-11-37 (a) before trial. However, the request by counsel and directions by the trial court made during the pretrial conference, together with the later post-trial hearing and rulings by the trial court, were delayed efforts to fulfill the intended function of OCGA § 9-11-37 (a). The delay in bringing this discovery matter on for hearing was due entirely to the conduct of Orkin, and the requests and rulings on the part of counsel and the trial court accordingly will be construed as the equivalent of a motion to compel and order compelling discovery under OCGA § 9-11-37 (a).

OCGA § 9-11-37 (a) (4) provides: "AWARD OF EXPENSES OF MOTION. (A) If the motion [to compel] is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion . . . to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust."

A ruling of the trial court will be affirmed if it is right for any reason. *Rowell v. Parker*, 192 Ga. App. 215, 216 (2) (384 SE2d 396) (1989). We conclude the trial court had the power under OCGA § 9-11-37 (a) (4) (A) to award the attorney fees incurred by plaintiffs as a result of Orkin's erroneous denial of the existence of relevant docu-

---

[1] The trial court found that Orkin's failure to produce the inspection notes was not wilful or intentional. However, failure to produce need not be wilful to be sanctioned; wilfulness affects only the choice of sanction to be imposed. See *Mayer*, supra, 243 Ga. at 437 (1).

[2] Those notes were prepared by another witness, have not reappeared at trial or elsewhere, and are unrelated to those at issue here.

ments, as though awarding attorney fees in connection with a successful motion to compel. This fulfills the trial court's stated purpose not to impose sanctions but to recompense plaintiffs for the expenses they incurred as a result of Orkin's conduct. We note that Orkin's conduct not only necessitated substantial expense to plaintiffs; it caused a mistrial and the waste of substantial time, money, and judicial resources.[3]

A litigant will not be heard to contend that its own conduct has removed it beyond the reach of sanctions, when it has frustrated the orderly process prescribed in OCGA § 9-11-37 by false or erroneous responses to interrogatories. To condone such conduct would force parties to assume the falsity of every sworn interrogatory response and file endless motions preserving their right to relief. Such a rule would allow the unscrupulous to conceal documents from opposing parties by the simple expedient of denying their existence, without fear of penalty if the deception were by some chance discovered. It would discourage diligence in seeking out relevant documents even on the part of those not actively dishonest. Lack of diligence or negligence would not only be unpunished, it would be rewarded.

Orkin belatedly asserted a claim of privilege with regard to the inspection reports, relying on a general, nonspecific claim of privilege made in its response to a request for production. However, Orkin never moved for a protective order and never sought interlocutory review on that or any other basis, and the supposed claim of privilege was not asserted in the pretrial conference where similar notes were discussed. A general claim of privilege in a discovery response is insufficient to preserve a claim as to a document which has been falsely declared not to exist. As the trial court correctly observed: "Not only is such a process disruptive to the trial and a serious inconvenience to the jurors, it erodes public confidence in the judicial process. If defendant was allowed to succeed with its argument, the message to be conveyed is unmistakable — it is permissible to hide documents during discovery and then gamble on whether the deception will be uncovered, and if so, rely on the court to approve the misconduct by granting an out-of-time protective order."

4. Orkin contends the trial court erred in denying its motions for

---

[3] We further note that Orkin in this appeal sought permission to file a brief in excess of the page limitations under Rule 11 of this court, but when that motion was denied, Orkin filed a brief using a typeface some 50 percent smaller than the customary scale that produces approximately 65 characters per line. The typeface used in the brief is also significantly smaller than the typeface previously used by Orkin in other pleadings filed in this case in the trial court. This produced a brief with an actual, "uncompressed" length of approximately 45 pages, rather than the 30 pages routinely permitted by Rule 11. While present Rule 11 does not directly address reduction of typeface size, this practice is an obvious effort to circumvent that rule and, regrettably, demonstrates the need for amendment of the rule.

summary judgment and for directed verdict, asserting there is no proof of negligent treatment of plaintiffs' home and no proof of personal injury to McIntosh.

A directed verdict is authorized only where the evidence, with all reasonable deductions and construed in favor of the non-movant, demands a particular verdict. OCGA § 9-11-50 (a). Where there is "any evidence" or "some evidence" to support the non-movant's claims, a jury issue is created and a directed verdict is improper. *Jones v. Abel*, 209 Ga. App. 889, 890 (2) (434 SE2d 822) (1993). The evidentiary standard on summary judgment is analogous to that on directed verdict. *Piggly Wiggly Southern v. Thigpen*, 188 Ga. App. 839, 841 (374 SE2d 773) (1988).

As the trial court observed in its order, plaintiffs presented expert testimony that pesticide was improperly applied in plaintiffs' home in violation of the Georgia Pest Control Rules. Orkin presented testimony that its treatment of the home was proper. This conflict in testimony is clearly inappropriate for resolution on motion for summary judgment or directed verdict. McIntosh presented medical testimony and other evidence of immediate physical symptoms, and two physicians testified her symptoms were due to long-term effects of pesticide exposure, specifically exposure to the pesticide used by Orkin.[4] Orkin contends McIntosh's physicians disagreed as to the cause and extent of her symptoms, but this dispute likewise is for the jury to decide. Orkin's reliance on *Boyd v. Orkin Exterminating Co.*, 191 Ga. App. 38 (381 SE2d 295) (1989), overruled on other grounds, *Hanna v. McWilliams*, 213 Ga. App. 648, 651 (446 SE2d 741) (1994), is misplaced. In that case, there was no evidence presented of any symptom or illness that could be attributed to pesticide exposure.

Orkin, however, contends the expert testimony relied upon by McIntosh is "outside the mainstream of scientific thought," citing *Daubert v. Merrill Dow Pharmaceuticals*, 509 U. S. ____ (113 SC 2786, 125 LE2d 469) (1993). We first note that *Daubert* involves the application of Federal Rule of Evidence 702, which has not been adopted in Georgia. The applicable law in Georgia is OCGA § 24-9-67, which provides: "[t]he opinions of experts on any question of science, skill, trade or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." Provided an expert witness is properly qualified in the field in which he offers testimony, *Chandler Exterminators v. Morris*, 262 Ga. 257 (416 SE2d 277) (1992), and the facts relied upon are within the bounds of the evidence, whether there is sufficient knowledge

---

[4] We note that the documents not produced by Orkin, as discussed in Division 3, above, contain numerous notations regarding the treatment and remedial efforts by Orkin at the home and the physical symptoms complained of by McIntosh.

upon which to base an opinion or whether it is based upon hearsay goes to the weight and credibility of the testimony, not its admissibility. *King v. Browning*, 246 Ga. 46, 47 (1) (268 SE2d 653) (1980); *Jones v. Ray*, 159 Ga. App. 734, 736 (4) (285 SE2d 42) (1981).

With respect to a particular scientific procedure or technique, the trial court makes a determination "whether the procedure or technique in question has reached a scientific stage of verifiable certainty," based upon evidence, expert testimony, treatises, or the rationale of cases in other jurisdictions. *Harper v. State*, 249 Ga. 519, 525 (1) (292 SE2d 389) (1982) (rejecting use of "truth serum" to elicit testimony from criminal defendant); compare *Caldwell v. State*, 260 Ga. 278 (393 SE2d 436) (1990) (accepting use of DNA testing). However, Orkin does not challenge a particular scientific test or technique employed by plaintiffs' experts; Orkin challenges the conclusions drawn by those experts from testimony and evidence in the record. This determination is for the jury, and the trial court did not err in denying Orkin's motions for summary judgment and directed verdict.

5. We conclude, however, that the trial court erred in granting plaintiffs' motion in limine with respect to evidence of the relationship between McIntosh and a female witness on her behalf, with whom she lives and has had a sexual relationship "for many years." While the trial court determined disclosure of this relationship would be prejudicial, concerns regarding prejudice in this instance must yield to the statutory mandate of OCGA § 24-9-68: "The state of a witness's feelings towards the parties and his relationship to them *may always be proved* for the consideration of the jury." (Emphasis supplied.) Even where the evidence already shows close friendship and cohabitation, a lesbian relationship between a party and a witness on her behalf may be proved to show their intimate relations and the witness's potential bias. *Watkins v. State*, 206 Ga. App. 701, 706 (7) (426 SE2d 238) (1992).

*Judgment affirmed in part and reversed in part. Pope, C. J., and McMurray, P. J., concur.*

DECIDED NOVEMBER 30, 1994 —
RECONSIDERATIONS DENIED DECEMBER 13, 1994 —

*Decker & Hallman, Richard P. Decker, W. Winston Briggs*, for appellant.

*Eugene C. Brooks IV, Adam P. Cerbone, Weiner, Shearouse, Weitz, Greenberg & Shawe, N. Harvey Weitz*, for appellees.