A95A1585. JORDAN et al. v. GEORGIA POWER COMPANY et al.
(466 SE2d 601)

POPE, Presiding Judge.

On July 24, 1991, Larry and Nancy Jordan filed a complaint in Douglas County against Georgia Power Company and Oglethorpe Power Corporation ("Oglethorpe") for damages arising from electromagnetic radiation on their property. The case was tried to a jury, and the jury returned a defendants' verdict on causation; this appeal followed.

The complaint alleged that since 1972 Larry Jordan had owned and resided on property onto which Nancy Jordan and her children moved in 1983. According to the complaint, in 1973 Oglethorpe and Georgia Power installed power lines on an easement next to the Jordans' property, and those power lines began emitting unreasonably dangerous levels of electromagnetic radiation onto the property. The complaint claimed that as a result of the electromagnetic fields

---

("EMFs"), the property had been rendered unsafe and Nancy Jordan had developed non-Hodgkin's lymphoma. The complaint set forth counts for injunctive relief, trespass, nuisance, negligence, inherently dangerous activity, negligent misrepresentation, battery and punitive damages.

Oglethorpe and Georgia Power answered the complaint and filed a motion for bifurcation. The court granted the motion to bifurcate the trial on the issues of liability and damages.

Oglethorpe and Georgia Power filed a motion for summary judgment, setting forth a variety of arguments. Subsequently, the Jordans dismissed the claim for fraud, all claims of their minor children, and all claims for future medical monitoring for Larry Jordan. On December 28, 1993, the court granted summary judgment on the Jordans' trespass claim and concluded that the case would be tried according to a negligence standard, not according to the standard for ultrahazardous activities. In the pretrial order, filed several days before trial, the Jordans reiterated their claims for compensatory and punitive damages on theories of trespass, nuisance, battery, negligence, and strict liability.

From April 19 until May 5, 1994, evidence was presented to a jury. Seventeen witnesses, including Larry and Nancy Jordan, testified. Larry Jordan testified that when he bought the property in 1972, he was aware of the easement which Georgia Power had on the property. He stated that he did not recall power lines being built on the property until 1973. Mr. Jordan testified that he and Nancy Jordan were married in 1983 and that she then moved into his house. Nancy Jordan was diagnosed with breast cancer in 1985 and with a second cancer, the subject of this lawsuit, in 1989. In 1990 the Jordans moved; they had a difficult time selling the house. Larry Jordan testified that eventually the bank foreclosed on the house, because he could no longer make payments.

The Jordans called several expert witnesses. Dr. Peter Wright, a cancer specialist, testified that Mrs. Jordan's disease developed because of her exposure to electromagnetic radiation generated through power lines. Wright testified that electromagnetic radiation caused non-Hodgkin's lymphoma and that this conclusion was supported by various studies.

Oglethorpe and Georgia Power called as witnesses Dr. James Bland and Dr. Saul Rosenberg, who testified that electromagnetic radiation did not cause Mrs. Jordan's disease. These doctors testified that magnetic fields from power lines were not the cause of lymphomas in general, or of non-Hodgkin's lymphoma in particular.

After the conclusion of the evidence, but before the jury returned its verdict, the court directed a verdict against the Jordans on the battery and punitive damages claims. The jury then returned its ver-

dict, finding that the magnetic fields from the transmission lines were not the proximate cause of Mrs. Jordan's non-Hodgkin's lymphoma. After the return of the verdict on causation, the court directed a verdict against the Jordans on their nuisance claim. The court then entered judgment in favor of Oglethorpe and Georgia Power and against the Jordans.

At the outset, we note that while we are unable to find Georgia cases addressing the viability of a claim for EMF exposure, the issue of injury allegedly caused by EMFs has arisen in several contexts in other states. See generally *San Diego Gas &c. Co. v. Superior Court of Orange County*, 36 Cal. App. 4th 1461, 38 Cal. Rptr. 2d 811, rehearing granted 41 Cal. Rptr. 2d 220 (895 P2d 56) (1995); *Borenkind v. Consolidated Edison Corp.*, 164 Misc. 2d 808 (626 NYS2d 414) (1995); *Chappell v. Va. Elec. &c. Co.*, 250 Va. 169 (458 SE2d 282) (1995); *Linnebur v. Pub. Svc. Comm. of Colorado*, 716 P2d 1120 (Colo. 1986); see also Orr and Boswell, "The Use and Abuse of Scientific Evidence: A Case Study in Electromagnetic Field Litigation," Ga. Bar Journal, Vol. I, Issue 1, 1995. We recognize that in rendering this decision, we are necessarily limited by the *present* state of scientific knowledge.

1. The Jordans argue that the court erred by permitting expert witnesses called by Oglethorpe and Georgia Power to testify concerning hearsay opinions of unidentified non-testifying witnesses. Before trial the Jordans filed a motion in limine to exclude testimony as to a "consensus in the scientific community," which motion the court denied. Here, citing *Brown v. State*, 206 Ga. App. 800 (427 SE2d 9) (1992), and *Martin v. Reed*, 200 Ga. App. 775 (409 SE2d 874) (1991), they contend that an expert witness may not act as a surrogate for a non-testifying expert.

The specific testimony to which the Jordans object was that of Drs. James Bland and Saul Rosenberg. Dr. Rosenberg, a physician and professor of radiation oncology at Stanford University, testified that the scientific medical community did not consider magnetic fields from power lines a cause of lymphomas in general, or of non-Hodgkin's lymphoma in particular. Similarly, Dr. Bland, a medical doctor with a specialty in radiation oncology, testified that "the medical oncology community in this area and in Georgia does not feel that EMF is a causative factor for non-Hodgkin's lymphoma." Both doctors also testified that in their opinions, Mrs. Jordan's disease was not caused by the magnetic fields from the power lines.

In *Orkin Exterminating Co. v. McIntosh*, 215 Ga. App. 587 (4) (452 SE2d 159) (1994), this Court addressed a somewhat similar issue regarding causation. There, citing *Daubert v. Merrell Dow Pharmaceuticals*, 509 U. S. ___ (113 SC 2786, 125 LE2d 469) (1993), Orkin argued that the expert testimony relied upon by McIntosh regarding

the long-term effects of pesticide exposure was "outside the mainstream of scientific thought" and was inadmissible.

In resolving the question of whether the scientific testimony regarding causation was admissible, the *Orkin* court stated: "[w]e first note that *Daubert* involves the application of Federal Rule of Evidence 702, which has not been adopted in Georgia. The applicable law in Georgia is OCGA § 24-9-67, which provides: 'the opinions of experts on any question of science, skill, trade or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses.' Provided an expert witness is properly qualified in the field in which he offers testimony [cits.], and the facts relied upon are within the bounds of the evidence, whether there is sufficient knowledge upon which to base an opinion or whether it is based upon hearsay goes to the weight and credibility of the testimony, not its admissibility. [Cits.]" *Orkin*, 215 Ga. App. at 592.

"With respect to a particular scientific procedure or technique, the trial court makes a determination 'whether the procedure or technique in question has reached a scientific stage of verifiable certainty,' based upon evidence, expert testimony, treatises, or the rationale of cases in other jurisdictions. *Harper v. State*, 249 Ga. 519, 525 (1) (292 SE2d 389) (1982)." *Orkin*, 215 Ga. App. at 593. In making its determination, the court may rely on evidence "presented to it at trial by the parties; in this regard expert testimony may be of value. Or the trial court may base its determination on exhibits, treatises or the rationale of cases in other jurisdictions. The significant point is that the trial court makes this determination based on the evidence available to [it] rather than by simply calculating the consensus in the scientific community." (Citations and punctuation omitted.) *Harper*, 249 Ga. at 525.

Contrary to the assertions of Oglethorpe and Georgia Power, *Harper* did not hold that an expert witness may, in the presence of the jury, testify as these witnesses did regarding a perceived consensus in the scientific community. Though it was proper for the court to allow the doctors' testimony regarding their own opinions of the cause of Mrs. Jordan's illness, the court committed reversible error in admitting this "consensus" testimony. "An expert may give an opinion upon the facts testified to by other witnesses, but not upon their opinions. A witness' opinion must be his own and he cannot act as a mere conduit for the opinions of others." (Citations and punctuation omitted.) *In the Interest of A. S. M.*, 214 Ga. App. 668, 671 (1) (448 SE2d 703) (1994). Neither Dr. Bland nor Dr. Rosenberg clearly identified the "community" of experts for which he was speaking, nor did either doctor precisely explain the method by which he ascertained the "consensus." See generally *Manley v. State*, 206 Ga. App. 281 (424 SE2d 818) (1992).

We cannot hold that the error was harmless. Contrary to Oglethorpe and Georgia Power's contentions, the Jordans' experts' use of treatises differs from the testimony the court allowed here. Similarly, despite Oglethorpe and Georgia Power's arguments to the contrary, we have not found any instances in which the Jordans' experts were allowed to testify regarding a "consensus" of opinion.

Because of our conclusion, we will address only the remaining enumerations which will assist the trial court in the retrial.

2. The Jordans claim that the court erred in granting summary judgment on their trespass claim. They argue that the court invaded the province of the jury, resolved factual disputes based on inadmissible non-record evidence and erred by ruling that there must be physical damage to land to constitute a trespass.

In their motion for summary judgment, Oglethorpe and Georgia Power argued that EMFs are not tangible matter and that their alleged presence on the Jordans' property could not constitute a trespass. In response, the Jordans filed the affidavit of Roy Martin, a licensed professional electrical engineer, in which he stated that electromagnetic radiation from power lines is tangible. Martin further stated that a magnetic field could be detected and measured by appropriate measuring devices and that such fields obeyed physical laws.

In its order granting the motion, the court concluded that although the Jordans claimed that there was a detectible entry on their property by the EMFs, these fields were not tangible as defined by law for the purpose of trespass determinations. The court stated: "in Georgia a physical invasion of some kind is required in order to state a cause of action for trespass. There has been no physical injury to the real estate alleged. There has been no physical entry alleged. The plaintiffs allege there is a detectible entry by non-tangible magnetic fields. However, such fields are not tangible as that term is defined by law for the purpose of trespass determinations."

OCGA § 1-3-3 (20) provides: " '[t]respass' means any misfeasance, transgression, or offense which damages another's health, reputation, or property." With respect to injuries to real estate, OCGA § 51-9-1 defines the cause of action for interference with enjoyment of property, stating: "[t]he right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall lie."

Although arguably the Jordans' trespass action could present a jury question, we conclude that for policy reasons the trial court's grant of summary judgment was proper. The scientific evidence regarding whether EMFs cause harm of any kind is inconclusive; the invasive quality of these electric fields cannot presently constitute a

trespass. See generally *Borenkind v. Consolidated Edison Corp.*, 164 Misc. 2d 808, 810 (626 NYS2d 414) (1995). In reaching this conclusion, we do not close the door on the possibility that science may advance to a point at which damage from EMFs is legally cognizable and a trespass action may lie.

3. The Jordans claim that the court erred by granting a directed verdict on the nuisance and property damage claims. In their motion for directed verdict, Oglethorpe and Georgia Power argued that there was neither proof of injury or damage to the property, nor was there evidence of any interference with its use and enjoyment. In directing the verdict, the court concluded that there were no measurable damages or injury and that there was no nuisance.

Here, the Jordans argue that the court's conclusion that there was no evidence of property damage ignored the fact that the trial was bifurcated as to damages and causation. They contend that because of the bifurcation, evidence of nominal damages was sufficient to preserve this claim.

OCGA § 41-1-1 defines a nuisance as "anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance. The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man." Moreover, "while a physical invasion is generally necessary, noise, odors and smoke which impair the landowners' enjoyment of his property are also actionable nuisances, if, and only if, a partial condemnation of the property results. [Cit.]" *Dept. of Transp. v. Bonnett*, 257 Ga. 189, 190 (1) (358 SE2d 245) (1987); see also *Hoffman v. Atlanta Gas Light Co.*, 206 Ga. App. 727 (426 SE2d 387) (1992) (hydrocarbon contamination of ground constitutes nuisance and continuing trespass).

Here, the trial court properly directed a verdict on the nuisance claim. Again, for the reasons outlined in Division 2 above, the present state of science does not authorize recovery based on these facts.

4. Greystone Power Company ("Greystone") is the electrical membership cooperative serving Douglas County. Greystone receives all of its power from defendant Oglethorpe and is a member of Oglethorpe. The jury was qualified as to Oglethorpe, but the Jordans claim that the court erred in refusing to qualify the jury as to Greystone.

Citing *Thompson v. Sawnee Elec. Membership Corp.*, 157 Ga. App. 561 (278 SE2d 143) (1981), the Jordans argue that the court should have disqualified for cause 27 of the 36-person jury pool who were members of Greystone. In *Lowman v. State*, 197 Ga. App. 556, 557 (2) (398 SE2d 832) (1990), the court stated: "[t]he provisions governing the organization of and membership in an electric membership

corporation are codified at OCGA § 46-3-170 et seq.[1] OCGA § 46-3-260 makes membership in the electric membership corporation mandatory for those who receive or have agreed to receive electric service from the corporation. Members of the corporation have the right to vote (OCGA § 46-3-266), to bring derivative actions (OCGA § 46-3-272), and to remove directors and certain officers and agents (OCGA §§ 46-3-295 and 46-3-302 (b), respectively). Although OCGA § 46-3-340 (a) provides that electric membership corporations are operated without profit to their members, subsection (c) of that provision mandates that the bylaws of the corporation 'contain provisions, consistent with subsection (a) of this Code section, for accounting for, allocating, assigning and disposing of its revenues and assets and may establish classes of members for such purposes.' A mechanism is also provided for returning revenues upon the death of a member (OCGA § 46-3-341)."

The *Lowman* court continued: "[b]ased on factors such as the foregoing this court previously has determined that 'the members of an electric membership corporation are in the same position as the stockholders of a corporation or the policyholders of a mutual insurance company as regards their right to share in the net earnings of the business.' *Thompson*[, 157 Ga. App. at 562-563]. Thus, the court in *Thompson* concluded that the 'members of an electric membership corporation are disqualified from service as jurors in the trial of a case in which damages are sought from the corporation.' " *Lowman v. State*, 197 Ga. App. at 557. See generally OCGA § 15-12-135.

Since the decision in *Thompson*, the previous statute (Code Ann. § 34B-117) governing EMC surplus revenues has been changed. OCGA § 46-3-340 (c) now provides that the bylaws of each EMC govern the disposition of the revenues of EMCs. Thus, upon retrial, if the Jordans again argue that Greystone members should be disqualified from the jury, they should present evidence that Greystone's bylaws vest in its members a right to share in its surplus revenues, or that Greystone's members have a right under Oglethorpe's bylaws to share in Oglethorpe's surplus revenues. If the Jordans present such evidence, the court would be obligated to disqualify such Greystone members as jurors.

*Judgment reversed. Beasley, C. J, and Ruffin, J., concur.*

---

[1] Although the Jordans contend that Greystone Power Company falls within the provisions of the electric membership corporation (EMC) act, we note that it does not comply with OCGA § 46-3-220 which requires that a company formed thereunder include the words "electric membership corporation" or an abbreviation thereof in its name.

DECIDED NOVEMBER 30, 1995 —
RECONSIDERATION DENIED DECEMBER 20, 1995 —

*Doffermyre, Shields, Canfield & Knowles, Robert E. Shields,* for appellants.

*Troutman Sanders, Robert L. Pennington, Scott A. Farrow, Sutherland, Asbill & Brennan, James A. Orr,* for appellees.