*Thomas P. Stamps*, for appellee.

A98A0453. THOMAS v. CSX TRANSPORTATION, INC.
(503 SE2d 662)

RUFFIN, Judge.

James Larry Thomas sued his employer, CSX Transportation, Inc. ("CSX"), under the Federal Employers' Liability Act ("FELA"), 45 USC § 51 et seq., for injuries he suffered in an automobile collision while en route to work. The collision involved the van transporting Thomas and other CSX employees to a job site and an unoccupied pickup truck which rolled into the moving van. The trial court granted CSX summary judgment, and Thomas appealed. For reasons which follow, we reverse.

"Summary judgment is appropriate when the evidence, construed in the nonmovant's favor, shows no issue of material fact remains and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). 'A defendant who will not bear the burden of

proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the moving party may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue. (Cit.)' *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991)." *Key v. Norfolk Southern R. Co.*, 228 Ga. App. 305 (491 SE2d 511) (1997).

Viewing the evidence in the light most favorable to Thomas, the nonmovant, we find that CSX hired City Contract Bus Service, Inc. ("Bus Service") to provide transportation services for CSX employees. On February 1, 1994, Bus Service employee Sydney Johnson was transporting four CSX workers, including Thomas, in a Bus Service van. The van was traveling north on Highway 411, a two-lane road. North of the van on the right-hand side of the highway was a convenience store where the pickup truck involved in the collision was located. The store parking lot had two entrances separated by a grassy median and ditch. Gas pumps were located in the parking lot of the store. The parking lot was situated on a slight upgrade from the road. Johnson had a clear view of the store from 600 to 800 feet south of the store's location. Evidence was presented that the speed limit was 45 mph and that Johnson was traveling 50 to 55 mph.

Despite the highly visible nature of the store and its parking lot, Johnson testified that he did not see the pickup truck moving backwards away from the store towards the highway until he was 15 to 20 feet south of the store. The collision occurred when Johnson continued traveling in his lane and the unoccupied truck rolled into the right side of the van. Johnson said he could not turn left or right to avoid the collision. While Johnson first testified during his deposition that he never saw a driver in the truck, he later stated that prior to the collision it appeared that there was someone in the truck.

Trooper C. G. Payne of the Georgia State Patrol investigated the collision and testified that he found no evidence Johnson attempted to avoid being struck by the truck. Payne further commented that "I think there could have been some evasive action taken. As to what amount, you know, it would be speculation." However, upon requestioning, Trooper Payne agreed that given his limited reconstruction of the collision, he could not make a conclusion whether Johnson could have taken evasive action.

Thomas testified that he was sitting in the middle seat of the van on the right side. When he first saw the truck, it was already rolling backwards and the rear of the truck had reached the grassy median next to the highway. According to Thomas, when he noticed the truck coming toward the road, he yelled "look out . . . he's going

to hit us." Thomas testified that Johnson did not apply his brakes before impact. Thomas stated that he knew of no reason why Johnson could not have stopped the van prior to impact, although he admitted he did not know whether Johnson could have veered left or right. Thomas claimed injuries from the collision.

Stephen Standridge, another CSX employee who was sitting in the front passenger seat of the van, testified that prior to impact Johnson did not slow down and did not steer left or right to avoid the collision.

CSX employee Larry Beasley, who was riding in the back seat of the van, testified that he saw the truck moving backwards when it was near the gas pumps in the middle of the store's parking lot. Beasley stated that he believed Johnson could have taken evasive action since, "if I seen the pickup, he should have noticed it." However, Beasley admitted that when he first saw the truck, he did not think there was a problem or potential hazard from the truck's movement.

After hearing this evidence, the trial court granted CSX summary judgment, finding that Thomas' injuries were not caused to any extent by Johnson's alleged negligence.

FELA "makes a common carrier engaged in interstate commerce 'liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier.' 45 U.S.C. § 51." *Richardson v. Missouri Pacific R. Co.*, 677 F2d 663, 665 (8th Cir. 1982). "A railroad company is not an insurer in a FELA case. What the carrier must do is exercise reasonable care in view of the existing circumstances. . . . The carrier is required to take precautions commensurate with danger inherent in the situation and to exercise ordinary care proportionate to the consequences that might be reasonably anticipated from neglect." (Citations omitted.) *Hepner v. Southern R. Co.*, 182 Ga. App. 346, 347 (356 SE2d 30) (1987). "Under [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." (Citation and punctuation omitted.) *CSX Transp. v. Snead*, 219 Ga. App. 491, 495 (2) (465 SE2d 690) (1995).

"As a general proposition issues of negligence [and] contributory negligence . . . are not susceptible of summary adjudication either for or against the claimant, but should be resolved by trial in the ordinary manner. [Cit.] The trial court can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff only where the evidence is plain, palpable and undisputable. [Cit.]" *Ellington v. Tolar Constr. Co.*, 237 Ga. 235, 237 (227 SE2d 336) (1976).

In this case, Johnson had the right to assume, since he had the right of way on the highway, that the truck would obey the rules of the road. *Kicklighter v. Jones*, 202 Ga. App. 654 (415 SE2d 302) (1992). He also had the right to proceed at a reasonable speed. Id. However, Johnson was required to " 'exercise ordinary care in the control, speed and movements of his vehicle to avoid a collision after he sees or by ordinary diligence could have seen that [his van was] threatened by the active negligence of another. (Cit.)' [Cit.]" Id. at 655. And, he was prohibited from traveling "at a speed greater than [was] reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing." OCGA § 40-6-180.

We find that questions of fact remain regarding whether Johnson exercised ordinary care in the control, speed, and movements of the van. *Kicklighter*, supra. The evidence showed that Johnson was speeding, and thus a jury question exists whether Johnson's speed contributed to the collision. And, the evidence is unclear whether Johnson could have slowed prior to the collision or taken other evasive action. It is also unclear whether Johnson saw no one in the truck so as to alert him to the potential danger of a runaway vehicle. Additionally, a jury question remains whether Johnson, through the exercise of ordinary diligence, should have seen the truck rolling backwards sooner, given the clear visibility and the fact that several of his passengers saw the truck before he did. And, a connected issue for resolution is whether Johnson should have ascertained the danger posed by the truck's backing even had he seen it from a distance farther than 15 to 20 feet.

We find *Edwards v. Trammell*, 187 Ga. App. 22 (369 SE2d 288) (1988), upon which the trial court relied in granting CSX summary judgment, inapposite and distinguishable. In *Edwards*, a bus driver, while operating a school bus eastbound on an Atlanta road, pulled into an intersection to turn left. Before starting her turn, she looked ahead at traffic heading westbound to see if the lanes were clear. As she started making her turn, the plaintiff, who was heading westbound, entered the intersection on a red light and collided with the front of the bus. The plaintiff sued the bus driver, the trial court granted the bus driver summary judgment, and we affirmed. Id. at 24. Unlike the instant case where Johnson was speeding and questions remain regarding whether he was exercising diligence in watching traffic in front of him and whether he had time to react to avoid the collision, it was clear in *Edwards* that the bus driver exercised ordinary diligence in looking ahead before making her turn, she was not speeding, and she had no time to react to the plaintiff's negligent conduct.

Accordingly, we cannot hold as a matter of law that Johnson was

not negligent, even in the slightest, and his actions played no part in causing Thomas' injuries. See *Snead*, supra. This is not a case where the evidence is plain, palpable and indisputable so as to warrant granting summary judgment to CSX. See *Ellington*, supra. Therefore, the judgment of the trial court is reversed and the case remanded for further proceedings consistent with this opinion.

*Judgment reversed. Beasley, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 30, 1998.

*Bennett & Hamilton, Lindsay H. Bennett, Jr.*, for appellant.
*Casey, Gilson & Williams, Andrew B. Goldberger*, for appellee.