A98A1854. NORFOLK SOUTHERN RAILWAY COMPANY
v. BAKER et al.
(514 SE2d 448)

McMURRAY, Presiding Judge.

After working on the railroad as a locomotive engineer for 18 years, Phil Baker ("the decedent") was stricken with nasopharyngeal cancer and died.[1] The decedent's widow, Linda W. Baker, brought an action, individually and as representative of her husband's estate, against the decedent's former employer, Norfolk Southern Railway Company ("Norfolk Southern"), alleging the decedent's fatal cancer was caused by prolonged exposure to exhaust from Norfolk Southern's diesel powered locomotives. Ms. Baker charged Norfolk Southern with failing to provide the decedent with a safe place to work in violation of the Federal Employers' Liability Act ("FELA"), 45 USC § 51 et seq., and with violating the Locomotive Boiler Inspection Act's ("LBIA"), 45 USC § 23, regulation that products of combustion shall be released outside locomotive crew-cabins, 49 CFR § 229.43 (a).[2]

Norfolk Southern denied liability and the case was tried before a jury. The jury returned a $5,744,225.50 verdict for Ms. Baker and the decedent's estate. The evidence adduced at trial, construed to uphold this verdict (*Southeastern Security Ins. Co. v. Hotle*, 222 Ga. App. 161, 162 (1) (473 SE2d 256)), reveals that the decedent, while working in the crew-cabin areas of Norfolk Southern's locomotives, was exposed to high levels of diesel exhaust — six days a week, four to

---

[1] The nasopharynx is at the back of the mouth, just above the soft pallet, next to the tonsils.

[2] This regulation provides as follows:

Products of combustion shall be released entirely outside the cab and other compartments. Exhaust stacks shall be of sufficient height or other means provided to prevent entry of products of combustion into the cab or other compartments under usual operating conditions.

twelve hours a day; that this exposure, according to expert testimony, "incriminates diesel exhaust as the cause of [the decedent's] fatal nasopharyngeal cancer"; that Norfolk Southern knew, since at least 1985, that its locomotive crews were reporting medical problems and other difficulties due to excessive diesel exhaust in their working cabins and that Norfolk Southern did not remedy the situation before the decedent's death in 1991.

The decedent testified posthumously, during a videotaped deposition, that "black smoke" routinely flooded the crew-cabins of the Norfolk Southern diesel powered locomotives he operated; that this smoke was from the locomotives' centrally mounted exhaust stacks; that he was exposed to such exhaust "to a degree at all times" during his four to twelve hour daily runs between Macon, Georgia and Valdosta, Georgia, and that his exposure to diesel exhaust was greatest during warm weather (at least six months per year) because Norfolk Southern did not air condition its locomotives' crew-cabins. The decedent explained that the only way to cool the crew-cabin on a Norfolk Southern locomotive, which was probably "twenty to thirty degrees warmer . . . than . . . outside," was to open the cabin's tandem windows, but that this procedure allowed "black [diesel] smoke" to flood the crew-cabin from the locomotive's cabin-forward exhaust stack.

Another Norfolk Southern locomotive engineer, James Robert Sexton, testified that he informed Norfolk Southern officials in 1985 that diesel exhaust was causing medical problems for Norfolk Southern's locomotive crews. Mr. Sexton also testified that he advised his Norfolk Southern supervisors that most of the exhaust was entering the crews' work areas because Norfolk Southern's bidirectional locomotives were operating in the direction which placed the locomotives' crew-cabins aft of the diesel exhaust stacks and that this problem could be improved by operating the locomotives in the direction which placed the crew-cabins forward of the diesel exhaust stacks. Mr. Sexton's testimony reveals that he also suggested to his Norfolk Southern supervisors that air conditioning its locomotives' crew-cabins would improve the diesel exhaust problem, but that Norfolk Southern did not adopt his recommendations or any effective policy for reducing the diesel exhaust problem in its locomotives' crew-cabins.

Luther J. Sibley testified that he worked with the decedent during his career as a Norfolk Southern conductor; that his exposure and the decedent's exposure to diesel exhaust was so heavy that, "winter or summer, . . . the fumes that would come in would get in your clothing, would get in your hair, would get in — you breathe it, you could taste it, and [that] this was a day-in and day-out situation." Mr. Sibley explained that, before runs, he often asked to configure the locomotives he was assigned to operate so that the locomotives'

crew-cabins would be in front of the diesel exhaust stacks, but that his Norfolk Southern supervisor usually responded by saying: " 'Well, we're not going to alter the engines just to accommodate you so that you all won't have fumes coming in the engine cab. The engines come in here on a certain consist [(configuration), and] that's how we're going to run them. You be satisfied with it.' "

This appeal followed the trial court's denial of Norfolk Southern's motion for new trial and motion for judgment notwithstanding the verdict. *Held*:

1. Citing *Daubert v. Merrill Dow Pharmaceuticals*, 509 U. S. 579 (113 SC 2786, 125 LE2d 469), Norfolk Southern contends the trial court erred in denying its motion for directed verdict because Ms. Baker's medical expert did not offer a probable scientific basis for his opinion that diesel exhaust caused or contributed to the decedent's fatal nasopharyngeal cancer.

> We first note that *Daubert* involves the application of Federal Rule of Evidence 702, which has not been adopted in Georgia. The applicable law in Georgia is OCGA § 24-9-67, which provides: "the opinions of experts on any question of science, skill, trade or like questions shall always be admissible; and such opinions may be given on the facts as proved by other witnesses." Provided an expert witness is properly qualified in the field in which he offers testimony, *Chandler Exterminators v. Morris*, 262 Ga. 257 (416 SE2d 277) (1992), and the facts relied upon are within the bounds of the evidence, whether there is sufficient knowledge upon which to base an opinion or whether it is based upon hearsay goes to the weight and credibility of the testimony, not its admissibility. *King v. Browning*, 246 Ga. 46, 47 (1) (268 SE2d 653) (1980); *Jones v. Ray*, 159 Ga. App. 734, 736 (4) (285 SE2d 42) (1981).

*Orkin Exterminating Co. v. McIntosh*, 215 Ga. App. 587, 591 (4), 592 (452 SE2d 159).

In the case sub judice, the unchallenged testimony of Dr. Samuel S. Epstein, Professor of Occupational & Environmental Health at the School of Public Health in Chicago, Illinois, qualified him as an expert in chemistry, pathology, internal medicine, toxicology, cancer causation and the carcinogenic properties of diesel exhaust. After opining that "the preponderance of evidence clearly incriminates diesel exhaust as the cause of [the decedent's] fatal nasopharyngeal cancer," Dr. Epstein explained that he based his opinion on estimates of the decedent's exposure to diesel exhaust (posed in a factually supported hypothetical question), his understanding of diesel exhaust

chemistry and his knowledge and examination of studies linking diesel exhaust to cancer in laboratory animals and humans. Dr. Epstein explained that diesel exhaust contains many carcinogenic elements — including high levels of formaldehyde; that formaldehyde causes nasal cancer in laboratory animals and that formaldehyde has been shown to cause the type of cancer that was discovered in the decedent's nasopharynx — "squamous cancer." Dr. Epstein further explained that diesel exhaust, while generally carcinogenic, poses a specific risk for nasopharyngeal cancer because it contains soot particles which absorb the exhaust's carcinogenic gases and then, when inhaled, accumulates these concentrated carcinogens in the nasopharynx. This testimony is sufficient to authorize the jury's finding that diesel exhaust caused, or played a role in causing the decedent's fatal nasopharyngeal cancer.

"Under (FELA) the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." (Citations and punctuation omitted.) *CSX Transp. v. Snead*, 219 Ga. App. 491, 495 (2) (465 SE2d 690) (1995).

*Thomas v. CSX Transp.*, 233 Ga. App. 178, 180 (503 SE2d 662). The case sub judice is not controlled by *Motorola v. Ward*, 223 Ga. App. 678, 679 (478 SE2d 465) (physical precedent only), and *Jordan v. Ga. Power Co.*, 219 Ga. App. 690, 694 (2) (466 SE2d 601), where this Court held that there were insufficient statistical or scientific data to support expert opinions that electromagnetic fields cause cancer. Unlike the case sub judice, *Motorola* and *Jordan* are actions that were not subject to the lesser quantum of evidence required to establish liability in FELA cases. See *Thomas v. CSX Transp.*, 233 Ga. App. 178, 180, supra. See also *Harbin v. Burlington Northern R. Co.*, 921 F2d 129, 130-131 (7th Cir. 1990) (quantum of evidence required to establish liability in an FELA case is much less than in an ordinary negligence case). But even assuming the contrary, we find Dr. Epstein's explanation for his opinion regarding the cause of the decedent's cancer sufficient to demonstrate a "reasonable probability" of a causal connection between the decedent's exposure to diesel exhaust and his nasopharyngeal cancer. See *Holley v. Smallwood*, 174 Ga. App. 365, 366 (330 SE2d 136); *Maurer v. Chyatte*, 173 Ga. App. 343 (3), 344-345 (326 SE2d 543). The trial court, therefore, did not err in allowing the jury to resolve the issue of causation and in denying Norfolk Southern's motion for directed verdict or for a new trial.

2. Norfolk Southern's third enumeration of error contends that it

"was entitled to a directed verdict on [Ms. Baker's] Locomotive Boiler Inspection Act claim, because the evidence failed to demonstrate that the level of diesel emissions in locomotive cabs exceeded the levels permitted by the Federal Railroad Administration [("FRA")]." Although Norfolk Southern supports this assertion by referring to an FRA opinion letter, Defendant's Exhibit 682, that purportedly defines LBIA's tolerance for certain amounts of diesel exhaust in locomotive crew-cabins, Norfolk Southern does not show where this letter can be found in the case sub judice's 23 volume record as required by Rule 27 (a) of the Court of Appeals of the State of Georgia. Moreover, our examination of the trial transcript and the trial transcript's exhibit index indicates that Defendant's Exhibit 682 was discussed and identified at trial, but not proffered into evidence. Under such circumstances, there is no basis for considering Norfolk Southern's assertion that LBIA's tolerance for diesel exhaust in locomotive crew-cabins is anything other than the apparently clear and unambiguous standard prescribed in 49 CFR 229.43 (a). That is, that

> [p]roducts of combustion shall be released entirely outside the cab and other compartments [of locomotives and that locomotive exhaust] stacks shall be of sufficient height or other means provided to prevent entry of products of combustion into the cab or other compartments under usual operating conditions.

From this perspective, we find the decedent's testimony and the testimony of his conductor, Luther J. Sibley, regarding the decedent's daily exposure to diesel exhaust, sufficient to authorize the jury's consideration of Norfolk Southern's liability for failing to comply with 49 CFR 229.43 (a). See *Lilly v. Grand Trunk Western R. Co.*, 317 U. S. 481, 485 (63 SC 347, 87 LE 411).

The trial court did not err in denying Norfolk Southern's motion for directed verdict as to Ms. Baker's strict liability claim under LBIA.

3. Because there is nothing to refute Ms. Baker's evidence that Norfolk Southern violated LBIA's regulation against diesel exhaust in its locomotives' crew-cabins and since there is proof that this violation contributed to the decedent's death, the trial court did not err in refusing to give Norfolk Southern's requested jury charge on contributory negligence. In FELA cases based on a LBIA violation, contributory negligence cannot be considered in mitigation of damages. See 45 USC § 53; *Rogers v. Missouri Pacific R. Co.*, 352 U. S. 500, 506 (77 SC 443, 1 LE2d 493); *Western & Atlantic R. v. Townsend*, 36 Ga. App. 70, 74 (6) (135 SE 439); *Baker v. CSX Transp.*, 581 NE2d 770, 781-782 (1991).

*Hickox v. Seaboard System R.*, 183 Ga. App. 330 (358 SE2d 889), is not controlling because, unlike the case sub judice, the injured railway worker in *Hickox* did not base his FELA action, in whole or in part, on a statutory or regulatory violation that was enacted for the safety of employees.

4. Citing *Key v. Norfolk Southern R. Co.*, 228 Ga. App. 305 (491 SE2d 511), Norfolk Southern contends it was entitled to a directed verdict based on Ms. Baker's proof that Norfolk Southern's locomotives were not air conditioned. Specifically, Norfolk Southern reasons that this proof converted Ms. Baker's action into a design defect case which is preempted by LBIA. We do not agree.

In *Key*, a railway worker claimed that he was injured by defectively designed steps on his railway employer's locomotive. Because it was undisputed that these steps complied with LBIA's design regulations, this Court held that LBIA preempted the injured employee's common-law design defect claim and authorized summary judgment for the railway employer. This Court explained that any evidence of a design defect beyond the requirements of LBIA's regulations was immaterial. *Key v. Norfolk Southern R. Co.*, 228 Ga. App. 305, supra. The case sub judice is distinguishable because, even though LBIA's regulations may not have required air conditioners on Norfolk Southern's locomotives, proof that Norfolk Southern refused, unlike other railway operators, to air condition its locomotives was material to Ms. Baker's FELA claim that Norfolk Southern did not take reasonable steps to provide a safe workplace for the decedent.

5. Norfolk Southern contends the trial court erred in charging the jury that the decedent's estate would be entitled to recover the full value of the decedent's life. We are compelled to agree.

In *Atlantic Coast Line R. Co. v. Solomon*, 37 Ga. App. 737, 738 (2) (141 SE 917), this Court held that a new trial was required because the trial court, in a FELA case, erroneously "charged the Georgia rule as to the measure of damages, under which the plaintiff would be entitled to recover the full value of the life of the decedent." Id. at 738 (2), supra.

Damages recoverable in an FELA action are compensatory only. *Seaboard System R. v. Taylor*, 176 Ga. App. 847 (2) (338 SE2d 23) (1985). The FELA plaintiff can recover special damages for past and future lost wages and medical expenses, as well as general damages for pain and suffering. See, e.g., *CSX Transp. v. Darling*, 189 Ga. App. 719 (377 SE2d 217) (1988); *Nairn v. Nat. R. Passenger Corp.*, 837 F2d 565 (2nd Cir. 1988).

*Central of Ga. R. Co. v. Swindle*, 260 Ga. 685, 686 (398 SE2d 365).

The trial court's erroneous jury instruction as to the right to recover the full value of the decedent's life, as well as the jury's general verdict, requires this Court to reverse and remand the case sub judice for a new trial as to damages only. And contrary to Ms. Baker's assertions that four juror affidavits fairly explain the jury's verdict, we find that the trial court's erroneous instruction cannot be construed as harmless because the proper measure of damages in any FELA action is inseparably connected with the right of action. *Monessen Southwestern R. Co. v. Morgan*, 486 U. S. 330 (108 SC 1837, 100 LE2d 349). Norfolk Southern did not specifically complain, and we do not reach any other aspect of the trial court's damages charge.

*Judgment affirmed in part and reversed in part and remanded with direction. Blackburn and Eldridge, JJ., concur.*

DECIDED MARCH 11, 1999 —
RECONSIDERATION DENIED MARCH 30, 1999 —

*Hall, Bloch, Garland & Meyer, Mark E. Toth, Nelson, Mullins, Riley & Scarborough, Richard B. North, Jr., Tara R. Simkins, Donald L. Swift III*, for appellant.

*Doffermyre, Shields, Canfield, Knowles & Devine, Robert E. Shields, Ralph I. Knowles, Jr., Chambless, Higdon & Carson, Marc T. Treadwell*, for appellees.