## A02A2165. JACKSON v. THE STATE.
(572 SE2d 703)

BLACKBURN, Chief Judge.

Following a jury trial, Marvin Jackson appeals his convictions for aggravated sodomy, simple battery, and false imprisonment,[1] contending that: (1) the evidence was insufficient to support the verdict; and the trial court erred by (2) allowing one of the State's experts to give hearsay testimony; and (3) admitting statements made by Jack-

---

son prior to being informed of his *Miranda* rights. For the reasons set forth below, we affirm.

1. Jackson contends that the evidence was insufficient to support the verdict. We disagree.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[2] Conflicts in the testimony of the witnesses, including the State's witnesses, [are] a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld. The testimony of a single witness is generally sufficient to establish a fact.

*Phagan v. State*.[3]

Viewed in this light, the record shows that, on the afternoon of May 29, 2000, Jackson attended a luncheon with his ex-girlfriend, who broke up with him a couple of weeks earlier due to a monetary dispute. Jackson became inebriated at the luncheon, and, in order to get away from him, his ex-girlfriend asked him to accompany her to a convenience store and left him there. Before Jackson's ex-girlfriend could drive away, however, Jackson hit her in her face.

That night, Jackson went to his ex-girlfriend's home, and, when he approached the door, his ex-girlfriend told him to leave or she would call the police. Jackson then kicked in the door and forced his ex-girlfriend into the bedroom. Jackson then forced her to perform fellatio, and he anally sodomized her. When Jackson went to the bathroom, his ex-girlfriend fled to a neighbor's house and called the police. By the time the police arrived, Jackson was no longer on the scene. Jackson's ex-girlfriend was taken to the hospital, where an examination revealed that she had four tears in the lining of her anus.

When Jackson's ex-girlfriend returned home the next morning, she found Jackson asleep in her bed. Officer Angelo Brown arrived at the scene shortly thereafter, roused Jackson from sleep, and placed him under arrest. In the patrol car, Jackson told Officer Brown he wanted to talk to him. Jackson had not been informed of his *Miranda*

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[3] *Phagan v. State*, 243 Ga. App. 568, 569-570 (2) (533 SE2d 757) (2000).

rights, but Officer Brown told him: "I don't want or need to hear anything, but I will listen to you." Jackson then told Officer Brown that, on the evening in question, his ex-girlfriend asked him to have sex with her and told him to treat her roughly. Jackson also stated that his ex-girlfriend preferred rough sex.

This evidence was sufficient to support the verdict. *Jackson,* supra.

2. Jackson contends that the trial court erred by allowing one of the State's witnesses to testify regarding a study on the formation of anal tears during nonconsensual intercourse. Jackson argues that the State's expert merely recited this study without any separate knowledge or opinion on the issue and, as such, the study constituted inadmissible hearsay.

"An expert may give an opinion upon the facts testified to by other witnesses, but not upon their opinions. A witness' opinion must be his own and he cannot act as a mere conduit for the opinions of others." (Punctuation omitted.) *Jordan v. Ga. Power Co.*[4] However, "[e]ven when an expert's testimony is based on hearsay, the lack of personal knowledge on the part of the expert does not mandate the exclusion of the opinion but, rather, presents a jury question as to the weight which should be assigned the opinion. The evidence should go to the jury for whatever it's worth." (Punctuation omitted.) *Roberts v. Baker.*[5]

At trial, Jo Sternes, a physician's assistant, testified for the State as an expert witness in the area of sexual assault examinations. When asked whether the anal tears suffered by Jackson's ex-girlfriend were consistent with consensual intercourse, Sternes stated that she was familiar with two recent studies showing that consensual intercourse did not generally result in injury. Sternes went on to state that she had personally seen injuries like those received by Jackson's ex-girlfriend in women who had reported non-consensual anal intercourse.

The transcript in this case makes it abundantly clear that Sternes did not merely recite the opinion set forth in the studies she had read. To the contrary, she stated her personal knowledge. As such, the studies cited by Sternes did not constitute inadmissible hearsay, and this enumeration is patently erroneous.

3. Finally, Jackson contends that the trial court erred, following a *Jackson-Denno* hearing, by admitting his non-*Mirandized* statements regarding the nature of his sexual relationship with his ex-

---

[4] *Jordan v. Ga. Power Co.*, 219 Ga. App. 690, 693 (1) (466 SE2d 601) (1995).
[5] *Roberts v. Baker*, 265 Ga. 902, 903 (1) (463 SE2d 694) (1995).

girlfriend. Because Jackson's statements were voluntary, we disagree.

To determine the admissibility of a statement during a *Jackson-Denno* hearing, a trial court must determine, by a preponderance of the evidence, whether the applicable statement was knowing and voluntary. *Fowler v. State.*[6] Applying that standard here, as described previously, Jackson told Officer Brown in his patrol car that, on the night in question, he had sex with his ex-girlfriend, that his ex-girlfriend asked him to have sex with her, and that his ex-girlfriend asked him to treat her roughly. It is undisputed that Jackson was in custody when these statements were made and that Jackson had not yet been informed of his *Miranda* rights.

The question in this case, therefore, becomes whether Jackson made these statements as the result of an interrogation or voluntarily. "[T]he necessity of administering *Miranda* warnings exists only when the individual is interrogated while in custody." (Emphasis omitted.) *Ramos v. State.*[7] *Miranda* warnings are not a prerequisite to the admission of voluntary statements.

At the time that Jackson made the statements in this case, he was not being interrogated. To the contrary, Officer Brown told Jackson that he did not need or want to hear anything that he had to say, but that he would listen if Jackson wanted him to do so. Despite this statement, Jackson voluntarily described his sexual conduct with his ex-girlfriend. Accordingly, *Miranda* does not apply to these statements.

Jackson argues that his statements could not be considered voluntary because he was under the influence of alcohol at the time they were made to the extent that he did not know what he was doing. Although Officer Brown testified that Jackson appeared intoxicated when he was arrested, there is nothing in the record indicating that Jackson was so intoxicated that his subsequent statement was not the product of rational intellect and free will. Furthermore, during his direct examination, Jackson remembered his statements to Officer Brown, restated the gist of them, and gave no indication whatsoever that he was intoxicated when he made them. As such, Jackson's argument that he was under the influence to the extent that his statements were involuntary is unpersuasive.

Moreover, even if Jackson's statement had been admitted improperly, any error would have been harmless. If the jury believed his statement, it would have actually helped his case, as Jackson's defense was that the "rough sex" between him and his ex-girlfriend

---

[6] *Fowler v. State*, 246 Ga. 256, 258 (3) (271 SE2d 168) (1980).
[7] *Ramos v. State*, 198 Ga. App. 65, 66 (2) (400 SE2d 353) (1990).

was consensual, not that it did not happen. Indeed, on direct examination, Jackson repeated this information for the jury to establish his defense, testifying that his ex-girlfriend frequently asked him for rough sex, including the night in question. As a result, this enumeration is meritless.

*Judgment affirmed. Johnson, P. J., and Miller, J., concur.*

DECIDED OCTOBER 10, 2002.

*Virginia W. Tinkler,* for appellant.
*J. Tom Morgan, District Attorney, Jeanne M. Canavan, Assistant District Attorney,* for appellee.