74909. HALLFORD v. KELLEY et al.

(360 SE2d 644)

DEEN, Presiding Judge.

Appellant Linda Hallford's husband was an employee of appellee Slash Pine Electric Membership Corporation, of which appellee Kelley was general manager. Approximately one year previous to the time of the incident which gave rise to the action below, Mr. Hallford had sustained an on-the-job injury for which, for some period of time, he had drawn workers' compensation benefits. He had returned to work but allegedly had had some difficulties (whether or not related to the injury is not clear from the record) which, according to unclear but nevertheless apparently undisputed evidence, had led to a discussion or discussions between Mr. Hallford and appellee Kelley regard-

ing the possibility of Mr. Hallford's being placed on disability status and drawing disability insurance benefits.

According to Mrs. Hallford's deposition testimony, her husband requested that she go to Kelley's office and question him regarding the possible placing of Mr. Hallford on disability, and what the disability benefits, expressed in dollars and cents, would amount to. Again according to Mrs. Hallford, she went to Kelley's office unannounced, closed the door to the secretary's office, and requested — or demanded, according to Kelley's deposition — a complete statement as to Kelley's "intentions toward" her husband. There was undisputed testimony that Kelley declined to discuss the matter with Mrs. Hallford unless her husband were also present. During the remainder of the impromptu conference, which the parties agreed lasted approximately five minutes (or, at a maximum, ten), Mrs. Hallford continued to press Kelley for the desired information and he continued to refuse to discuss it, for the reasons previously stated.

At this point the testimony regarding the details of the incident is in hopeless conflict. According to Mrs. Hallford, Kelley called her a "troublemaker" and rose from behind his desk and, in a loud and angry tone, asked her to leave the office. Still according to Mrs. Hallford, she moved a step or so towards the door but retorted, "You can't push me out of here!", whereupon Kelley simultaneously took a step towards her and picked up the telephone, replying (in partial paraphrase), "Like hell I can't! I'm going to call the police to come and make you leave." Mrs. Hallford testified that she then left the office in such a nervous state that she had to consult a physician later that day, and had continued to see that physician and also a psychologist. She subsequently acknowledged, however, that either she or her husband (or both) had already consulted these professionals prior to the incident complained of. She asserted that during the entire interview with Kelley she had spoken quietly and maintained a "lady-like" demeanor.

According to Mr. Kelley's deposition testimony, he was entering his office by a back door when Mrs. Hallford pushed past his secretary, who was standing in the front door. Kelley testified that, after inviting Mrs. Hallford to sit down, he seated himself at his desk and asked what her business was. According to Kelley, he could not remember whether Mrs. Hallford did not sit down at all or had sat briefly and then risen and stood over his desk in what he regarded as a threatening manner. According to Kelley, he declined to discuss her husband's situation without the latter present and, when Mrs. Hallford continued to insist, asked her to leave. When she refused, he lifted the telephone to call the police; Mrs. Hallford leaned over his desk and said, "I'll get you for this!" and left the office before he had actually dialed the number of the police department. According to

Kelley, once he had sat down at the beginning of the incident, he remained seated the entire time. He denied that he had used opprobrious or profane language to Mrs. Hallford or had raised his voice to her. He further testified that, since he had recently undergone major surgery, and was also receiving treatment for diabetes at the time of the incident with Mrs. Hallford, he had been left in a physically shaken condition by appellant's conduct. The parties agree that there was no witness who either saw or overheard the incident, as the secretary had left her office during that time.

Mrs. Hallford filed an assault action in the Clinch County Superior Court, alleging "certain injuries to her body and mind" and the infliction of "both physical pain and mental anguish." She named as defendants both Kelley and Slash Pine, as principal for whom Kelley was agent. Appellees moved for summary judgment, and the trial court granted the motion. Mrs. Hallford appeals the award of summary judgment to the defendant/appellees. *Held*:

On motion for summary judgment, the evidence, with all reasonable inferences therefrom, must be construed in the light most favorable to the non-moving party: here, Mrs. Hallford. OCGA § 9-11-56. The movant, when defendant, must pierce the plaintiff's pleadings and show that there is no genuine issue of material fact to be resolved by the jury or other factfinder. Id.

Our exhaustive review of the entire record in the instant case reveals that, while there is much conflict in the details of the testimony, there is no contention that Mr. Kelley in any way physically touched Mrs. Hallford or even made an overt motion to do so. There is only Mrs. Hallford's allegation that, as he picked up the telephone, he took a step in her direction, whereas Mr. Kelley testified that he not only did not move in her direction but was seated during the entire incident. Kelley further alleges that it was Mrs. Hallford, not he, who made threatening remarks and movements. The entire evidentiary situation thus degenerates into the proverbial "swearing contest."

In *Capitol TV Svc. v. Derrick*, 163 Ga. App. 65 (293 SE2d 724) (1982), this court held that an assault occurs when "all the apparent circumstances, reasonably viewed, are such as to lead a person reasonably to apprehend a violent injury from the unlawful act of another." Even construing the conflicting deposition testimony in the light most favorable to Mrs. Hallford (as, of course, we must), it is difficult for us to conclude that being called a "troublemaker," being told that the police would be called to evict her, and possibly being moved towards while her adversary was at the same time dialing a telephone number, would create such an apprehension of violent injury as reasonably to be considered an assault.

We note further that both parties cite cases which deal with ver-

bal assault arguably amounting to the intentional infliction of emotional distress. The cases cited involve the use of language or actions which — even if, *arguendo*, the plaintiff's allegations are absolutely true — are light years removed in offensiveness from the words and acts allegedly employed by Mr. Kelley towards Mrs. Hallford. In *Sanders v. Brown*, 178 Ga. App. 447 (343 SE2d 722) (1986), this court held at 449 et seq., that "in those cases where recovery has been authorized for intentional infliction of emotional distress, the defendant's actions were so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff." See, e.g., *Westview Cemetery v. Blanchard*, 234 Ga. 540 (216 SE2d 776) (1975); *McCoy v. Ga. Baptist Hosp.*, 167 Ga. App. 495 (306 SE2d 746) (1983); *American Fin. & Loan Corp. v. Coots*, 105 Ga. App. 849 (125 SE2d 689) (1962).

We find no error in the trial court's award of summary judgment to defendants.

*Judgment affirmed. Birdsong, C. J., and Pope, J., concur.*

DECIDED SEPTEMBER 8, 1987.

*Douglas W. Mitchell III*, for appellant.
*J. Baker McGee, Jr., Jack J. Helms*, for appellees.