Anthony BROWN, Plaintiff,

v.

Robert MANNING, et al., Defendants.

Civ. A. No. 91–32–2–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

May 10, 1991.

Daryl James Morton, Macon, Ga., for Anthony Brown.

Marc Thomas Treadwell, Robin Neal Bargeron, Macon, Ga., for Bob Manning.

Albert H. Parnell, Michael E. Hutchins, Atlanta, Ga., for National Indem. Co.

## ORDER

OWENS, *Chief Judge.*

In the instant action, defendants Robert Manning and National Indemnity Company ("NIC") have moved for summary judgment as to plaintiff Anthony Brown's complaint alleging assault and the intentional infliction of emotional distress stemming from statements allegedly made by defendant Manning to plaintiff Brown. Having reviewed the relevant authority, the briefs filed by the parties, and the affidavits and depositions, the court now issues the following findings of facts and conclusions of law.

### FACTUAL BACKGROUND

In the case *sub judice*, it is necessary to recount the language allegedly used by defendant Manning as accurately as possible in order for the reader to fully comprehend the nature of the comments complained of by the plaintiff. The court apologizes for the vulgarity of the language recounted *infra.*

On July 18, 1990, a vehicle operated by a NIC insured collided with a parked car owned by plaintiff Anthony Brown, and insured by Progressive Insurance Company ("Progressive"). Approximately one week after the accident occurred, plaintiff contacted defendant Manning, a claims examiner for NIC, regarding the repair of his

vehicle. During this initial conversation Manning informed plaintiff Brown that he needed plaintiff to provide him with an accident report and photographs of the damage to his vehicle. Defendant Manning said nothing that was offensive to plaintiff during the initial conversation.

The next day, after the requested information had been faxed to defendant Manning, plaintiff again contacted Manning. During the conversation plaintiff and defendant had a disagreement over the amount that NIC would pay for repairs to plaintiff's automobile. In his statement plaintiff relates the conversation as follows:

Q. Tell me what you remember about that specifically.

A. Okay. I told him—he was telling me that I have no say so in the matter of who fixes my car.

Q. Okay.

A. And he going to pay what this other Ford place said they were going to pay, and that's all he was going to pay. And I said, "Well, wait a minute." I said, "Wait a damn minute." These are my exact words. I said, "I have a right to say where I get my damn car fixed." He said, "That's what's wrong with you niggers now, you don't follow orders." And he said, "Either you are going to accept my offer or hell with you." I said, "Well, I'm going to turn it over to my insurance company," and I hung up.

Statement of Anthony Brown, p. 6. After this conversation with Manning, plaintiff turned the matter over to Progressive, his insurance company.

On or about November 8, 1990, plaintiff Brown received a letter from his insurance company asking the plaintiff to call. Plaintiff contacted his insurance company and learned that he would be reimbursed for part of the deductible on his car insurance from NIC. Plaintiff questioned his insurance company regarding the repair of his car. Progressive was not aware that plaintiff Brown's car had not been repaired. Plaintiff was put in contact with Karen Orender, an employee of Progressive, who informed him that defendant Manning refused to pay for the repairs to plaintiff's car because he felt the amount was too high.

Plaintiff then asked for defendant Manning's telephone number and telephoned Manning. Plaintiff relates the conversation as follows:

I said, "Good morning—good afternoon, Mr. Manning." "Good afternoon." And he asked me who was calling. And I told him, "This is Anthony Brown from Sparta, Georgia and I'm calling on my Cadillac." Okay. I said, "I've got a frame, a car that will not run." I said, "I've got a car that's out here that I can't—that I'm not allowed to put on the highway." Okay. I said, "Now, I need to know what you are going to do about it." "Nothing. I don't give a damn about you, I don't give a damn about your car; and furthermore, you can suck my long white dick, nigger." . . . After we heard it, I told him, I said, "Well, I'll see your ass in court." . . . I said, "You just fucked my day up." I said, "Thank you," and I hung up. . . .

Statement of Anthony Brown, pp. 21–25. Shortly after the above conversation with defendant Manning plaintiff suffered a black-out spell and had to be taken to Baldwin County Hospital where he was seen in the emergency room and released several hours later to see his own doctor.

On November 9, 1990, between the hours of 6:30 p.m. and 8:00 p.m., plaintiff received two calls at his home. The first call was received by plaintiff's wife, Gloridine Brown. In that conversation an unidentified individual stated that Ms. Brown should, "[t]ell your husband we are going to kill him if he don't back down. If he should get fired, we, the Ku Klux Klan, are going to kill him, We love stringing out niggers."

At approximately 8:00 p.m. plaintiff received a second telephone call, in which he was told by an unidentified individual, "[y]es, you nigger, we're going to blow your fucking brains out. We love stringing niggers up there on trees and cutting their dicks off. If you don't drop the charges against this person, the man, we're

going to kill your mother fucking ass, you hear me nigger, do you hear me nigger?" Plaintiff responded in the following manner: "Well, son-of-a-bitch, you Ku Klux Klans can bring your mother fucking asses on down here. I've got a uzi down here sitting on my front porch waiting on you. Come on. You bad, come on." Statement of Robert Manning, pp. 27–29.

## DISCUSSION

The Federal Rules of Civil Procedure allow for the granting of summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The moving party bears the initial burden of showing, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

In the instant case plaintiff seeks damages for the intentional infliction of emotional distress and for assault. The defendants have moved for summary judgment on the ground that the statements as alleged do not give rise to a cause of action for intentional infliction of emotional distress and because plaintiff will be unable to prove that the phone calls which plaintiff received on November 9, 1990, which are the basis for plaintiff's assault claim, were made by defendant Manning. Additionally, NIC contends that even if it could be proven that defendant Manning made the telephone calls received by plaintiff and his wife on November 9, 1990, the calls were not made within the scope of Manning's employment with NIC and, therefore, NIC would have no liability for Manning's actions.

The questions to be resolved by the court in resolving defendants' motions for summary judgment are purely legal in nature. The court must determine whether the statements allegedly made by defendant Manning are sufficient as a matter of law to support a cause of action for the inten-

tional infliction of emotional distress and assault. For the purpose of evaluating defendants' motions for summary judgment, the evidence and all factual inferences must be viewed in the light most favorable to the nonmovant. *Thrasher v. State Farm Fire & Casualty Co.*, 734 F.2d 637, 638 (11th Cir.1984). Thus, the allegations in plaintiff's complaint are taken as true. The court will first address plaintiff's assault claim.

■ In order to state a cause of action for assault under Georgia law, the "apparent circumstances reasonably viewed must be such as to lead a person reasonably to apprehend a violent injury from the unlawful act of another." *Hallford v. Kelley*, 184 Ga.App. 90, 360 S.E.2d 644 (1987). The two conversations that plaintiff had with defendant manning in which Manning made the statements alleged above, did not involve any threatening language which would have given plaintiff reason to apprehend a violent injury from the unlawful act of another. Thus, in the instant case, the only statements which could support plaintiff's cause of action for assault are those allegedly received by plaintiff and his wife on November 9, 1990.

■ Plaintiff Brown has admitted that he has no evidence to prove that defendant Manning made the threatening telephone calls to his residence on November 9, 1990. Plaintiff stated that he merely suspects that defendant Manning was the person who made the phone calls or had someone make the telephone calls on his behalf. Statement of Robert Brown, pp. 29–30. Nevertheless, plaintiff contends that references in those statements create questions of fact as to their relation to this case.

Plaintiff argues that in each of the conversations references were made which could reasonably be construed to refer to plaintiff's conflict with defendant Manning. Specifically, during the conversation with Mrs. Brown the caller stated, "[i]f we get fired, we're going to kill your husband." During the second conversation plaintiff was told, "[i]f you don't drop those charges against the man, we're going to kill you." Plaintiff contends that the above state-

ments should be considered as a part of the totality of the circumstances surrounding plaintiff's claim for emotional distress. Thus, plaintiff argues that he has carried his burden to demonstrate questions of material fact which need to be decided by a jury.

In the court's considered judgment, without evidence identifying the caller with defendant Manning, the alleged threats made by the caller cannot be attributed to Manning. *Sossenko v. Michelin Tire Corp.*, 172 Ga.App. 771, 773, 324 S.E.2d 593, 595 (1984). Accordingly, plaintiff's assault claim is insufficient as a matter of law.

■ The only basis for recovery against NIC would be NIC's vicarious liability for the actions of Manning as its employee. "Where the liability of a party is premised solely upon his vicarious liability for the tortious actions of an agent and judgment is entered for the agent, the party alleged to be vicariously liable is also entitled to judgment." *Kornegay v. Mundy*, 190 Ga. App. 433, 435, 379 S.E.2d 14, 17 (1989). Therefore, plaintiff's assault claim against NIC must also fail. The court will now turn to plaintiff's claim for the intentional infliction of emotional distress.

■ In order to sustain a cause of action under Georgia law for the emotional distress tort of willfully and wantonly causing emotional distress through the use of abusive or obscene language, the defendant's conduct must have been so abusive or obscene as naturally to humiliate, embarrass, frighten or extremely outrage the plaintiff. *Moses v. Prudential Ins. Co.*, 187 Ga.App. 222, 225, 369 S.E.2d 541, 543 (1988). "It is not enough that appellant's conduct in a given situation is intentional or that it is willful and wanton. In order to warrant recovery under either theory, the conduct also must be of such serious import as to naturally give rise to such intense feelings of humiliation, embarrassment, fright, or extreme outrage as to cause severe emotional distress. Otherwise, the conduct will not rise to the requisite level of outrageousness and egregiousness." *Id.* "The liability does not extend to mere insults, indignities, threats, annoy-

ances, petty oppressions, or other trivialities. . . . There is no occasion for the law to intervene in every case where someone's feelings are hurt." *Id.* quoting the Restatement (Second) of Torts at § 46, comment d.

In *Gordon v. Frost*, 193 Ga.App. 517, 388 S.E.2d 362 (1989), the Georgia Court of Appeals held that "the existence of a special relationship in which one person has control over another, . . . may produce a character of outrageousness that otherwise might not exist." *Id.* at 522, 388 S.E.2d at 366. The Restatement (Second) of Torts states, "[t]he extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests." Restatment (Second) of Torts § 46, comment e.

In the instant case, the disputing parties are not simply members of the general public. Defendant Manning is the representative of the insurance company whom plaintiff was required to deal with in order to have his claim resolved. Thus, defendant was in a position to affect the interests of plaintiff Brown. A jury could find in the instant case that defendant Manning's conduct went so far beyond the norms of acceptable business behavior as to produce a character of outrageousness that might not exist if the parties were simply members of the general public engaged in a personal dispute.

Thus, while the court is aware that the "rough edges of our society are still in need of filing down," the vulgarity of the language above goes beyond mere insult or acts which are inconsiderate or unkind, particularly given the relationship between the parties. Therefore, considering the totality of the circumstance, the court finds that the abusive and obscene language quoted, *supra*, does rise to the requisite level of outrageousness and egregiousness necessary to state a cause of action for the intentional infliction of emotional distress or the emotional distress of willfully and wantonly causing emotional distress through the use of abusive or obscene language.

The court further finds that based upon the facts as alleged by plaintiff, a jury

could find that the existence of severe emotional distress could be found. Once the evidence shows that reasonable persons might find the presence of extreme or outrageous conduct, the jury must find the facts and make its own characterization. *Grant,* at 521.

Therefore, for the reasons stated above, defendants' motion for summary judgment as to plaintiff's assault claim is GRANTED and defendants' motion for summary judgment as to plaintiff's claim for the intentional infliction of emotional distress is DENIED.

SO ORDERED.