## A97A0042. BULLOCK v. JEON.

(487 SE2d 692)

Beasley, Judge.

Robert Bullock and Yeong Jeon own competing liquor stores located near each other in Marietta, Georgia. In October 1994, Bullock had one of his employees enter and check the prices at Jeon's store, in response to which Jeon later that same day went to Bullock's store and confronted Bullock as to the purpose for this price-checking. Bullock responded that Jeon was free to check prices at Bullock's store.

Bullock deposed that Jeon, who speaks English poorly, then called Bullock "a s_o_b_," an "a_h_," and "crazy" in front of Bullock's customers, employees, and distributors. Bullock asked Jeon to leave, but Jeon refused. Bullock threatened to call police, went to the phone, picked up the receiver, and started dialing 911. Jeon then exited the store and stated as he approached the door, "you m_-f_, you m_-f_." The entire incident lasted between two and five minutes.

Bullock admitted at his deposition that (a) Jeon was free to enter Bullock's store, (b) Jeon did not cause any physical damage to Bullock's store or the merchandise therein, (c) Jeon did not threaten or attempt violently to injure Bullock, (d) Jeon never touched or attempted to touch Bullock, and (e) Bullock has not lost any customers or suppliers nor experienced any other financial loss as a result of the incident.

Bullock sued Jeon in four counts: trespass, slander, tortious interference with business relations, and assault. Following discovery, Jeon moved for summary judgment and Bullock moved for sanctions for the failure of Jeon and his counsel to cooperate at his deposition to such a degree that it constituted a failure to make discovery. The court, in a detailed order of explanation, granted summary judgment and declined to consider the motion for sanctions, apparently finding it moot. Bullock's appeal yields reversal on the trespass count only.

1. Bullock claims that Jeon's failure to leave the store premises immediately upon being asked to leave gives rise to a cause of action for trespass (Count 1). OCGA § 51-9-1 provides that "every act of

another which unlawfully interferes" with the right of enjoyment of private property "is a tort for which an action shall lie." OCGA § 16-7-21 defines unlawful trespass in part as when a person "knowingly and without authority . . . [r]emains upon the land or premises of another person . . . after receiving notice from the owner . . . to depart."

Evidence that a defendant refused to leave a store after he was asked to leave is sufficient to sustain a conviction for criminal trespass under OCGA § 16-7-21 (b) (3). *Johnson v. State*, 172 Ga. App. 333, 334 (2) (323 SE2d 255) (1984); *Amason v. Kroger Co.*, 204 Ga. App. 695, 697 (420 SE2d 314) (1992). See *Nash v. State*, 222 Ga. App. 766, 767 (2) (476 SE2d 69) (1996) ("Evidence that [defendant] remained at the residence after being notified by [one in authority] to depart was sufficient to support his conviction for criminal trespass"); *Rembert v. Arthur Schneider Sales,* 208 Ga. App. 903, 905 (432 SE2d 809) (1993) ("Once [defendant] refused to leave after being told to go by the owner, she became a criminal trespasser"). In *Reid v. State*, 224 Ga. App. 524, 525 (1) (481 SE2d 259) (1997), a security guard of a hospital "testified he told [defendant] to leave the room . . . but he refused. This alone was sufficient evidence of criminal trespass." But "[e]ven a trespasser, where he is rightfully ordered to leave a building by one having the premises in charge, is entitled to be allowed such a period of time as is necessary to enable him to make his exit from the room or building he is ordered to vacate. The amount of time reasonably necessary to enable such a trespasser to effect his departure may be varied by circumstances, and is a question of fact for determination by the jury." *Hollis v. State*, 13 Ga. App. 307, 308 (3) (79 SE 85) (1913). See *Reid v. State*, supra at 525 ("The statute requires that a person advised to leave must do so within a reasonable time in the circumstances, which is a question for the factfinder").

The evidence in favor of Bullock is that Bullock asked Jeon to leave the store premises three or four times, and Jeon expressly refused to do so. Jeon remained on the premises for upwards of four and a half minutes after being asked to leave and after he had announced that he would not. Only after Bullock threatened to call the police did Jeon leave. The jury must decide whether Jeon left within a reasonable time. The trial court erred in granting summary judgment on Count 1.

2. Bullock claims that Jeon committed slander per se by addressing Bullock with the words identified earlier and "crazy" (Count 2). Arguing that these terms impute that Bullock committed a crime punishable by law (i.e., necrophilia, fornication, and incest), Bullock claims such amounts to slander per se, thus negating the OCGA § 51-5-4 requirement of showing special damages.

Disparaging terms are slanderous per se only if the terms convey "the impression that the crime in question is being charged, [and also are] couched in such language as might reasonably be expected to convey that meaning to any one who happened to hear the utterance." *Anderson v. Fussell*, 75 Ga. App. 866, 869 (44 SE2d 694) (1947). If a statement's meaning is not ambiguous and can reasonably have but one interpretation, the question is one of law for the court. *Morrison v. Hayes*, 176 Ga. App. 128 (335 SE2d 596) (1985). Absent a sexual connotation, disparaging words allegedly imputing a sexual crime will not constitute slander per se. *Meyer v. Ledford*, 170 Ga. App. 245 (1) (316 SE2d 804) (1984); *Brooks v. Stone*, 170 Ga. App. 457 (317 SE2d 277) (1984).

The words Jeon used do not impute a violation of any criminal law by Bullock. See, e.g., *Connell v. Houser*, 189 Ga. App. 158 (4) (375 SE2d 136) (1988). While no Georgia appellate court has determined whether the term "m__-f__" amounts to slander per se, it generally communicates an obscenity reflecting the speaker's agitated and angry state of mind. It is a degrading insult, but it has not been interpreted as an actual accusation that the object of the remark has committed an illegal sexual act. See *Duckworth v. State*, 223 Ga. App. 250 (1) (477 SE2d 336) (1996); *Carter v. State*, 222 Ga. App. 397 (1) (474 SE2d 228) (1996); *Bolden v. State*, 148 Ga. App. 315 (4) (251 SE2d 165) (1978); see also *Smith v. State*, 266 Ga. 827, 828, n. 2 (470 SE2d 674) (1996).

Other jurisdictions are in accord. Holding that "fat, f__ing, disgusting bitch" did not amount to slander, a Massachusetts court reasoned: "The word "f__ing" as it is all too commonly used in modern parlance, is a word of emphasis meaning nothing more . . . than 'wretched,' 'rotten,' or 'accursed.' . . . It has no sexual connotation at all." *Travers v. Shane*, 1995 WL 809549 (Mass. Super., July 10, 1995). The Supreme Court of Virginia similarly concluded that "calling a person a 'm__-f__' . . . [does not] convey the false impression that someone committed incest." *Crawford v. United Steelworkers, AFL-CIO*, 335 SE2d 828, 839 (Va. 1985).

No reasonable person exposed to Jeon's invective, uttered as a parting shot after he had been ordered off the premises and immediately following an argument unrelated to sex, could have concluded that Jeon was accusing Bullock of having sexual intercourse with his own mother. Any reasonable hearer would have concluded that Jeon was expressing disgust for Bullock, albeit in a particularly obnoxious fashion. " 'The mere cursing of another (not amounting to slander) is not a violation of a legal right or duty capable of enforcement by process of law. . . . The defendant owes the plaintiff the formal obligation not to curse [him], but this is too delicate and subtle an obligation to be enforced in the rude way of getting money compensation for

a violation of this mere moral obligation.' [Cit.]" *Miller v. Friedman's Jewelers,* 107 Ga. App. 841, 843 (131 SE2d 663) (1963). See *Tuggle v. Wilson,* 248 Ga. 335, 337 (282 SE2d 110) (1981) ("In Georgia, there is no tort of obscenity"); *Bekele v. Ryals,* 177 Ga. App. 445, 446 (339 SE2d 655) (1986) ("Georgia law does not recognize 'name-calling' as a tort").

Although not slander per se, Jeon's statements could be characterized as derogatory name-calling, but then special damages would have to be shown. OCGA § 51-5-4; *Connell v. Houser,* 189 Ga. App. 158 (4) (375 SE2d 136) (1988). Bullock has admitted that he suffered no special damages.

3. An essential element of Bullock's claim of tortious interference with business relations (Count 3) is a showing of financial injury resulting from the alleged interference. *Jenkins v. General Hosp. of Humana,* 196 Ga. App. 150, 151 (395 SE2d 396) (1990). Bullock admitted the absence of any such injury.

4. Bullock's assault claim (Count 4) fails because "an assault occurs when 'all the apparent circumstances, reasonably viewed, are such as to lead a person reasonably to apprehend a violent injury from the unlawful act of another.' [Cit.]" *Hallford v. Kelley,* 184 Ga. App. 90, 92 (360 SE2d 644) (1987). A reasonable person in the circumstances presented would not have apprehended violent injury. Id. at 92-93. Bullock admitted at his deposition that Jeon did not threaten or attempt violently to injure him and that Jeon never touched or attempted to touch him.

5. Bullock enumerates as error the court's decision not to rule on his motion for sanctions. He cites no authority for the proposition that either it was not moot or he was entitled to any of the sanctions sought. In his motion, he requested that defendant's answer be stricken and plaintiff be awarded a default judgment or, alternatively, that the expenses of the deposition, including attorney fees, be assessed against defendant. He based the motion on OCGA § 9-11-37 (d) (1). Bullock's argument on appeal consists only of two rhetorical questions.

Defendant did not fail to appear for, or submit to, deposition but instead objected to some of the questions. OCGA § 9-11-37 (d) (1), allowing immediate sanctions for failure to appear, thus does not apply. *Mayer v. Interstate Fire Ins. Co.,* 243 Ga. 436, 437 (2) (254 SE2d 825) (1979); *General Motors Corp. v. Conkle,* 226 Ga. App. 34 (486 SE2d 180) (1997); *Orkin Exterminating Co. v. McIntosh,* 215 Ga. App. 587, 589 (3) (452 SE2d 159) (1994). Moreover, a denial of the motion (if it had been construed to be a motion to compel) would have been proper in view of Bullock's failure to file a certificate of a good faith attempt to resolve the discovery dispute as required by USCR 6.4 (B).

*Judgment affirmed in part and reversed in part. Senior Appellate Judge Harold R. Banke concurs. McMurray, P. J., concurs in judgment only.*

DECIDED JUNE 18, 1997.
Before Judge Ingram.
*Ted H. Reed*, for appellant.
*Drew, Eckl & Farnham, Stevan A. Miller, Julianne Swilley*, for appellee.