A02A0812. WOLFF v. MIDDLEBROOKS.
(568 SE2d 88)

MILLER, Judge.

Todd Wolff appeals from a general jury verdict against him on Anthony Middlebrooks's claims for slander per se and intentional infliction of emotional distress, and a verdict against him for punitive damages. On appeal Wolff contends that the trial court erred by fail-

---

ing to grant his motions for a directed verdict or judgment notwithstanding the verdict on plaintiff's slander per se, intentional infliction of emotional distress, and punitive damages claims. We find that the trial court erred by failing to grant a directed verdict on the intentional infliction of emotional distress claim but did not err by denying the motion on the slander per se claim. Since this Court has no way of determining whether any or all of the damages awarded by the jury were related to the emotional distress claim (due to the general verdict form), we reverse the judgment of the trial court and remand for a new trial on Middlebrooks's slander per se and punitive damages claims.

Viewed in the light most favorable to the plaintiff, the evidence reveals that on December 11, 1998, Wolff called into a popular local morning radio program on the radio station "99X." During the broadcast, Wolff (Middlebrooks's former employer) engaged in the following on-air conversation with the program DJs (Steve Barnes, Leslie Fram, and Jimmy Baron):

> Wolff: Jimmy . . . [t]here's a gentleman running around the Atlanta area claiming to have a love affair with you.
> Baron: You know what, I heard about this.
> Wolff: Yeah, yeah, you heard about him?
> Barnes: What?
> Fram: Somebody's obsessed with you.
> Baron: Somebody's, there's some dude running around saying that he was gay with me.
> Barnes: Really?
> Fram: Really?
> Wolff: Yeah, he was at the [softball] game.
> Barnes: No.
> Wolff: Yeah, he was at the game. He was behind one of the dugouts.
> Baron: Really.
> Wolff: Yes.
> Barnes: He claims that he's your lover?
> * * *
> Wolff: The gentleman running around is Tony Middlebrooks.
> Barnes: Oh, you know the guy?
> Wolff: Well, no, I've just, uh, I had a friend introduce himself and I asked him what was going on. But it was Tony Middlebrooks that was saying that he was having an affair with you.
> Baron: I don't know who that is.
> Barnes: Check that out, Jimmy. Thanks, Tony.
> Baron: Tony Middlebrooks. That's just dumb.

Middlebrooks was listening to the program at the time of the broadcast, as were 40,000 other listeners in the Atlanta area. It is undisputed that Wolff did not make the comments directly to Middlebrooks. Wolff knew that the statements that he made during the radio broadcast were false at the time that he made them.

Middlebrooks sued Wolff for slander per se and intentional infliction of emotional distress based on Wolff's on-air radio comments and also for punitive damages due to other alleged aggravating circumstances (i.e., just four days before Wolff made the comments, Middlebrooks had filed an employment grievance against Wolff for engaging in inappropriate conduct toward his wife at an office party, and Wolff fired Middlebrooks just one day before making the comments). After the close of Middlebrooks's case at trial, Wolff moved for a directed verdict on all of Middlebrooks's claims, which the court denied. The jury returned a general verdict in favor of Middlebrooks, awarding him $30,000 in damages. The verdict form did not indicate whether the jury based its verdict on either the slander per se claim or intentional infliction of emotional distress claim, or both. Finding a specific intent to cause harm, the jury also returned a verdict for punitive damages of $250,000. Wolff moved for a judgment n.o.v. and a new trial, and both motions were denied.

1. Wolff argues that the trial court erred by denying his motions for directed verdict and judgment n.o.v. on Middlebrooks's claim for slander per se. We disagree.

The standard of review of a directed verdict and a judgment n.o.v. is the same, and "a directed verdict is appropriate only if there is no conflict in the evidence as to any material issue and the evidence introduced, construed most favorably to the party opposing the motion, demands a particular verdict." (Citations omitted.) *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 137 (1) (508 SE2d 646) (1998). Here, there is some evidence from which a jury could determine that Wolff's on-air comments amounted to slander per se.

Slander or oral defamation that is actionable per se, meaning that no special damages need be shown, may consist in "[i]mputing to another a crime punishable by law . . . [or] [c]harging a person . . . with being guilty of some debasing act which may exclude him from society." OCGA § 51-5-4 (a) (1)-(2), (b).

A slanderous charge is actionable per se, whether the words directly or indirectly, by intimation or innuendo, contain slander. The slanderous charge is just as effectively harmful, and therefore actionable per se . . . whether the harmful effect results from words which directly and unequivocally make a charge or whether it results from words which do so indirectly or by inference. It is the harmful effect of defama-

tory language as it is understood which renders it actionable per se, and not its directness or unequivocal nature.

(Citation omitted.) *Southland Corp. v. Garren*, 135 Ga. App. 77, 79 (2) (b) (217 SE2d 347) (1975), rev'd on other grounds, 235 Ga. 784 (221 SE2d 571) (1976).

In the instant case, Middlebrooks claimed that Wolff's words imputed to him the crimes of adultery or fornication (had someone listening not known that he was married) or charged him with being guilty of some debasing act that would exclude him from society. Adultery occurs when a married person "voluntarily has sexual intercourse with a person other than his spouse. . . ." OCGA § 16-6-19. Fornication occurs when an unmarried person "voluntarily has sexual intercourse with another person. . . ." OCGA § 16-6-18.

By stating that Middlebrooks, a married man, was going around town professing to have an illicit affair with the radio DJ, Wolff raised the inference that such an illicit affair was taking place. The jury was authorized to draw this inference from the evidence presented and was further authorized to conclude that Middlebrooks's "having an affair" with the DJ included sexual relations. *Baskin v. Rogers*, 229 Ga. App. 250, 252 (2) (493 SE2d 728) (1997). The trial court therefore correctly allowed Middlebrooks's slander per se claim to be considered by the jury. See id.; see also *Veazy v. Blair*, 86 Ga. App. 721, 723 (1) (72 SE2d 481) (1952).

2. We hold that the trial court erred, however, by denying Wolff's motion for a directed verdict on Middlebrooks's claim for intentional infliction of emotional distress. "[E]ven malicious, wilful or wanton conduct will not warrant a recovery for the infliction of emotional distress if the conduct was not directed toward the plaintiff." *Ryckeley v. Callaway*, 261 Ga. 828, 829 (412 SE2d 826) (1992). "Defamatory remarks made . . . to the public in general are classic examples of conduct that, though harmful to the plaintiff, was directed toward the hearer of the statements, not to the plaintiff, and thus is not actionable as intentional infliction of emotional distress." *Lively v. McDaniel*, 240 Ga. App. 132, 134 (2) (522 SE2d 711) (1999). It is undisputed that the comments here were made during a radio broadcast to thousands of people and were not made directly to Middlebrooks. The trial court therefore erred by failing to grant a directed verdict to Wolff on this claim.

3. In light of our holdings in Divisions 1 and 2, and due to our inability to determine upon what basis the jury rendered its verdict on the general verdict form, we also cannot determine the underlying tort theory upon which the jury based its award for punitive damages. If the jury based its award of punitive damages on the underlying claim for which there could be no liability, there could likewise be

no recovery for punitive damages. See *Groutas v. McCoy*, 219 Ga. App. 252, 254 (3) (464 SE2d 657) (1995). Conversely, if the jury based its award on the underlying tort of slander, punitive damages could be recoverable. The award for punitive damages must therefore be reversed, and we remand this case for a new trial on the issues of slander per se and punitive damages.

We note that this entire question could have been resolved with a specific verdict form for slander per se and intentional infliction of emotional distress.

4. Based on the foregoing, Wolff's remaining enumeration is moot. As we have a transcript, Middlebrooks's motion to dismiss the appeal is denied.

*Judgment reversed and case remanded with direction. Blackburn, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 18, 2002 —
RECONSIDERATION DENIED JULY 2, 2002 — ▮▮▮▮▮▮▮▮

*William G. Leonard*, for appellant.
*Christopher G. Moorman*, for appellee.