## A05A1123. LIPPY v. BENSON et al.
### (622 SE2d 385)

RUFFIN, Chief Judge.

Jerry and Allison Benson sued Korinne Lippy for slander. Following a trial, the jury found in favor of the Bensons and awarded general damages and attorney fees. Lippy appeals, asserting that she was entitled to a directed verdict. She also contends that the trial court erred in charging the jury. For reasons that follow, we reverse.

1. "Where a jury returns a verdict and it has the approval of the trial judge, we must affirm on appeal if there is any evidence to support it."[1] Thus, a trial court properly grants a motion for directed verdict only if there is no conflict in the evidence and the moving party is entitled to judgment as a matter of law.[2]

Viewed in this manner, the record shows that in 2000, Lippy and her fiancé, Craig Zebrowski, moved into the Bensons' neighborhood.[3] The relationship between the Bensons and their new neighbors deteriorated shortly thereafter. Initially, Zebrowski and Lippy complained about the Bensons' dog, and Lippy called animal control when the dog left the Bensons' yard. Allison complained to Zebrowski about his speeding through the neighborhood. According to Allison,

---

[1] (Punctuation omitted.) *Vojnovic v. Brants,* 272 Ga. App. 475 (612 SE2d 621) (2005).

[2] See id.

[3] After suit was filed, Lippy married Craig Zebrowski and changed her name. For the sake of clarity, we refer to her as Lippy.

Zebrowski subsequently "peeled out of his driveway and purposely swerved his car like he was going to hit [her and her son]." Allison then called the police to report Zebrowski for reckless driving.

Three days later, a warrant was sworn against the Bensons for having a "dog-at-large." The Bensons had to go to court to respond to the charge. Ultimately, the Bensons installed an electric fence, and they considered the problem solved. However, Allison testified that the antagonism continued. If one of the family's cars was left on the street, she would discover that the car had been pelted with eggs or spat upon. At least one call was made to the homeowners' association to complain about the Bensons.

On September 2, 2002, Lippy saw the Bensons' two boys — ages three and six — playing in a soap bucket in the driveway. The two boys were naked. Lippy testified that she was "completely shocked," and she found the situation both disgusting and unsanitary. She further testified that Jerry Benson appeared to be "enjoying himself as he looked at his . . . naked boys." According to Lippy, she was worried that the children were exposed to the risk of pedophilia. Specifically, Lippy testified

> [n]o matter how well you think you know your neighbors or people that live around you, I mean anyone could have sick sexual deviancy and you just would never know about it, and if someone's never been caught and . . . convicted for . . . a crime of that nature, then you would have no idea who these people are. . . .

Thus, Lippy called the Department of Family and Children Services (DFCS) to convey her concern.

According to Lippy, she was not calling DFCS to make a report, but merely to inquire as to what was the appropriate age for children to be clothed in public. But the DFCS caseworker asked questions about the situation, which Lippy answered. Lippy also shared her concern about pedophilia. In her report, the DFCS reporter who spoke with Lippy documented that Lippy "stat[ed] that her neighbors leave[ ] their boys . . . unsupervised all [of] the time." According to Lippy, this statement "is an incorrect summary of what was said."

Based upon Lippy's comments, DFCS instituted an investigation into the Bensons. After interviewing the parents, both children, and several neighbors, DFCS concluded that the allegations of child neglect were unfounded. The Bensons then sued Lippy for slander, and a jury awarded each parent $50,000 in damages and approximately $10,500 in attorney fees. On appeal, Lippy contends that the verdict cannot stand because the evidence did not show either that

her statement to DFCS imputed a crime to the Bensons or accused them of a debasing act. We are compelled to agree.

"Slander . . . that is actionable per se, meaning that no special damages need be shown, may consist in imputing to another a crime punishable by law or charging a person with being guilty of some debasing act which may exclude him from society."[4] As this Court recently reiterated,

> [t]o determine whether a declaration constitutes slander per se, the court looks to the plain import of the words spoken and will not enlarge their meaning by innuendo. The pivotal questions are whether the statements can reasonably be interpreted as stating or implying defamatory facts about plaintiff and, if so, whether the defamatory assertions are capable of being proved false.[5]

In this case, the jury was asked to consider whether Lippy's statements imputed any of four crimes: cruelty to children; child molestation; child abandonment; or reckless conduct. We address each crime in turn.

(a) Pursuant to OCGA § 16-5-70 (b), a person commits the offense of cruelty to children "when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain." We fail to see how any of Lippy's statements could be construed as imputing this crime to the Bensons. Lippy told DFCS that the parents left the boys unsupervised and apparently wondered if such conduct could expose the children to harm. However, she did not say that the boys were actually subjected to harm, much less excessive physical or mental pain. Although someone might infer that young children left unsupervised might suffer such pain, we cannot enlarge the meaning of Lippy's statements in this manner.[6] Rather, to constitute slander per se, "the words at issue must charge the commission of a specific crime punishable by law."[7] And Lippy's comments simply do not impute the crime of cruelty to children to the Bensons.

(b) Similarly, Lippy's statements to DFCS do not impute the offense of molestation, which is defined as a person committing "any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the

---

[4] (Punctuation omitted.) *Wolff v. Middlebrooks*, 256 Ga. App. 268, 270 (1) (568 SE2d 88) (2002) (citing OCGA § 51-5-4).

[5] (Citation and punctuation omitted.) *Holsapple v. Smith*, 267 Ga. App. 17, 22 (3) (599 SE2d 28) (2004).

[6] See *McGee v. Gast*, 257 Ga. App. 882, 884 (2) (572 SE2d 398) (2002).

[7] (Punctuation omitted.) Id.

sexual desires of either the child or the person."[8] Initially, we fail to see how this offense might apply to Allison Benson. The Bensons apparently believe that Lippy's comments imputed such crime to Jerry Benson. Upon close examination of the evidence, however, it is apparent that this is not the case.

"Disparaging terms are slanderous per se only if the terms convey the impression that the crime in question is being charged, and also are couched in such language as might reasonably be expected to convey that meaning to any one who happened to hear the utterance."[9] Although Lippy testified that Jerry Benson appeared to enjoy himself as he watched his naked children, nothing she said indicated that his enjoyment was sexual. And her expression of concern that the children might be in danger from a pedophile was not explicitly directed toward Jerry Benson. In order to conclude that Benson had committed a crime, one would have to infer that his enjoyment was sexual or that Lippy believed he was a pedophile. Again, we cannot enlarge Lippy's statements in such manner.[10] Under these circumstances, the actual words spoken by Lippy did not impute that Jerry Benson molested his children.[11]

(c) A parent may be found criminally liable for abandoning his or her child. This offense occurs "when the father or mother does not furnish sufficient food, clothing, or shelter for the needs of the child."[12] Here, there is no evidence whatsoever that Lippy accused the Bensons of failing to provide adequate food, clothing, or shelter for their children. Thus, the allegation of this crime cannot serve as the basis for the Bensons' slander per se claim.

(d) Finally, Lippy's statements cannot be reasonably interpreted as imputing the crime of reckless conduct to the Bensons.[13] Under OCGA § 16-5-60 (b), a person is guilty of reckless conduct if that person

> causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

---

[8] OCGA § 16-6-4 (a).

[9] (Punctuation omitted.) *Bullock v. Jeon*, 226 Ga. App. 875, 877 (2) (487 SE2d 692) (1997).

[10] See *McGee*, supra.

[11] See *Bullock*, supra ("Absent a sexual connotation, disparaging words allegedly imputing a sexual crime will not constitute slander per se.").

[12] OCGA § 19-10-1 (a).

[13] The trial court also referred to this crime as "child endangerment."

Here, there is some evidence that, when Lippy called DFCS, she informed them that the Bensons routinely left their children with inadequate supervision. However, there is no evidence that Lippy said, in so doing, the parents disregarded a substantial, unjustifiable risk that the children would be harmed or endangered. Although Lippy testified that she was concerned that, by allowing their children to play outside while naked, the Bensons exposed them to risks ranging from sunburn to the West Nile virus, it strains credulity to consider the Bensons' actions in this regard as a gross deviation from the standard of care.

Ultimately, Lippy's allegations were sufficient to have DFCS investigate whether the children were deprived. Pursuant to OCGA § 15-11-2 (8), a deprived child is defined, inter alia, as one who "[i]s without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals." Mere deprivation, however, does not subject parents to criminal liability. Although the jury was authorized to find that Lippy's conduct in contacting DFCS was reprehensible, the evidence does not support their finding that Lippy's comments imputed criminal wrongdoing to the Bensons.

Further, we do not find any of Lippy's comments sufficient to charge the Bensons with being guilty of some debasing act that may exclude them from society.[14] Accordingly, the trial court erred in failing to direct a verdict in her favor.[15]

2. In view of our holding in Division 1, we need not address Lippy's remaining enumerations of error.

*Judgment reversed. Johnson, P. J., and Barnes, J., concur.*

DECIDED OCTOBER 6, 2005 —
RECONSIDERATION DENIED OCTOBER 21, 2005.

*A. Martin Kent, Catherine M. Duke*, for appellant.
*Ronald C. Berry*, for appellees.

---

[14] See *Webster v. Wilkins*, 217 Ga. App. 194, 196 (2) (456 SE2d 699) (1995) (statement that mother is "unfit to have a kid" does not constitute slander per se).

[15] See *McGee*, supra (summary judgment appropriate); *Bullock*, supra (same); compare *Wolff*, supra (statement that married man was "having an affair" imputed crime).